Geraldine OLIVER, Appellant,

v.

Nathan HUTSON et ux., Appellees.

No. 9073.

Court of Civil Appeals of Texas,
Amarillo.

March 12, 1980.

Rehearing Denied April 9, 1980.

Vickers, Purdom & Nelson, Kerwin Stephens, Lubbock, for appellant.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellees.

COUNTISS, Justice.

Appellant, Geraldine Oliver, presents a single point of error contending the trial court should not have granted the motion for instructed verdict by appellees, Nathan and Sandra Hutson, because she presented sufficient evidence entitling her to submit her case to the jury. Finding no reversible error, we affirm the judgment of the trial court.

On the evening of March 1, 1975, an explosion and fire substantially damaged a residence in the city of Lubbock owned by Oliver and occupied by the Hutsons as her tenants. The Hutsons had been in the residence during the day and entertained "out-of-town company" until approximately 7:30 p. m. Between 8:30 p. m. and 9:00 p. m., the Hutsons left to visit relatives in Little-field, Texas. Later that evening, persons in the residence next to the Hutsons' home heard an explosion and, upon investigation, discovered the Hutsons' home on fire. The fire department was called at 10:29 p. m. and extinguished the fire by 10:51 p. m. The interior of the home and the Hutsons' furniture and other personalty were extensively damaged by fire and smoke.

Mrs. Oliver initiated this litigation contending the negligence of the Hutsons proximately caused damage to the residence and specifically plead her intention to rely on the doctrine of *res ipsa loquitur*. After she rested her case, the trial court granted the Hutsons' motion for directed verdict.[1] Oliver has perfected her appeal to this court from the adverse judgment entered by the trial court.

The specific question before this court is whether Oliver's evidence, when tested against the evidentiary doctrine of *res ipsa loquitur*, raised questions of fact as to the Hutsons' negligence. Resolution of the question requires a detailed examination of the evidence. Because this is an appeal from a directed verdict, the examination must be conducted by accepting as true all evidence supporting Oliver's position and resolving in her favor all conflicts and inconsistencies. Additionally, Oliver is entitled to every inference that may properly be drawn from the evidence. An instructed verdict is appropriate only if there is no evidence tending to prove one or more essential elements of the plaintiff's case. *Hensley v. Lubbock Nat. Bank,* 561 S.W.2d 885, 889 (Tex.Civ.App.—Amarillo 1978, no writ).

---

1. The grounds stated in the motion are as follows:

No. 1, there is no direct evidence that Mr. Hutson was smoking in the chair during the evening in question, or Mr. Hutson's wife was smoking in the chair on the evening in question.

Secondly, to find that he was smoking in the chair, the jury must infer as from Mr. Black's testimony, must infer it from the testimony regarding Mr. Hutson's smoking habits, and there is none, except that he smokes a pack of cigarettes a day. There is no evidence as to the smoking habits of Mrs. Hutson or the brother-in-law.

Once indulging in this inference, then, the jury must take another step and further infer that Hutson was smoking carelessly.

Thirdly—forthly [*sic*], after the second inference, the jury must make a third inference, that such careless smoking was the cause of the fire.

In other words, there is no direct testimony allowing the Court to pyramid these inferences, and for these reasons the Defendant prays that such motion be granted.

Since Oliver contends she presented a prima facie case under the *res ipsa loquitur* doctrine, it is also necessary to review that aspect of our law of evidence. The most recent detailed study of *res ipsa loquitur* by the Texas Supreme Court appears in *Mobil Chemical Company v. Bell*, 517 S.W.2d 245 (Tex.1974). In that case, two employees of an independent contractor constructing a chemical plant for Mobil Chemical Company were injured when acetic acid escaped from a portion of the plant that had been completed and delivered to Mobil. The injuries occurred because of the failure of some part of a pressure relief mechanism attached to a pipe line carrying the acetic acid.

The Supreme Court first stated the basis for *res ipsa loquitur*. In certain limited cases, the very circumstances surrounding an accident provide sufficient circumstantial evidence of the defendant's negligence to support a fact finding of negligence. In such cases, the mere occurrence of the accident supports reasonable inferences that there was negligence, and it was the defendant who was negligent. *Mobil Chemical Company v. Bell, supra*, at 250–51. The Court then outlined the elements which must be satisfied in order to apply the doctrine:

> The *res ipsa* doctrine is applicable when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. . . . The first factor is necessary to support the inference of negligence and the second factor is necessary to support the inference that the defendant was the negligent party.

*Id.* at 251.

■ The practical effect of the doctrine is to permit, but not require, an inference of negligence if there is probative evidence of the two elements set out above. With such evidence, the plaintiff has produced some evidence of the defendant's negligence. He has then successfully met a no evidence challenge on that basis and has created a fact issue on negligence. *Id.* at 251.

■ The two elements are often referred to in shorthand terms as the "type of accident" element and the "control" element. In order to satisfy the "type of accident" element, the plaintiff may be able to rely upon general knowledge that an accident of the type in question simply does not occur without negligence. "However, expert testimony on this factor is clearly admissible and may be necessary to the plaintiff's case." *Id.* at 252.

■ The "control" element is satisfied by evidence that the instrumentality causing the injury was under the management and control of the defendant at the time the negligence inferable from the type of accident probably occurred. The nature and degree of control must be such that "the reasonable probabilities point to the defendant and support a reasonable inference that he was the negligent party. . . . The possibility of other causes does not have to be completely eliminated, but their likelihood must be so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door." *Mobil Chemical Company v. Bell, supra*, at 251.[2]

■ In summary, under the *res ipsa loquitur* doctrine the plaintiff creates a fact issue as to the defendant's negligence if the plaintiff (1) presents probative evidence, or establishes by general knowledge, that the accident in question would not ordinarily occur without negligence and (2) presents probative evidence that the defendant had management and control of the instrumen-

---

2. Of course, conflicting evidence may be presented on one or both elements. However, the *Mobil* case states that evidentiary disputes relative to the *res ipsa loquitur* elements are not ordinarily submitted to the jury for resolution. They are subissues of the ultimate negligence issue. Thus, the trial court does not make or obtain a fact finding on those subissues. It simply determines whether there is probative evidence of each. If there is, plaintiff has established a factual dispute on the ultimate negligence issue. *Mobil Chemical Company v. Bell*, 517 S.W.2d 245, 252 (Tex.1974).

tality causing the injury at the time the negligence inferable from the type of accident probably occurred.

■ From our review of the evidence, we are satisfied that Mrs. Oliver presented sufficient probative evidence, summarized as follows, to satisfy the "type of accident" element. She presented evidence of an explosion, followed by a fire. She also presented evidence that the fire originated in a vinyl lounge chair that belonged to the Hutsons, that vinyl gives off highly flammable gas when heated and that burn lines on the furniture and bedspreads in the bedrooms indicated a flash burn such as that caused when gas ignites. The testimony also tended to eliminate other possible causes of the fire, such as household gas or electrical lines. There was evidence that an ash tray, characterized as "unsafe" by one witness, was found in the debris of the chair. The Lubbock fire marshall, who was qualified as an expert witness, expressed his expert opinion that the fire originated in the vinyl lounge chair and "either the fire was knocked off of a cigarette or a cigarette was left in an ash tray and rolled off into the chair." He also testified that the cause of the fire was a "[c]igarette in the barcalounger, or in a chair, a large chair of some particular nature." Plaintiff's exhibit number one, the Lubbock fire department's incident report, also stated "[c]ause of fire was cigarette in barcalounger." The fire marshall concluded the fire from a cigarette smoldered in the vinyl lounge chair, giving off flammable gases that spread throughout the house and ultimately ignited causing the explosion and fire.[3] From the foregoing evidence, a jury could have reasonably concluded the fire in question would not have occurred without negligence.

■ Having presented probative evidence sufficient to satisfy the "type of accident" element, Mrs. Oliver was then re-quired to present probative evidence sufficient to satisfy the "control" element. She did not do so. It is virtually undisputed that the house and its contents, including the vinyl lounge chair, were under the control of the Hutsons. From Mrs. Oliver's pleading and evidence, however, the instrumentality which caused the injury was a burning cigarette that was dropped into the chair. The only evidence in the record linking cigarettes to the Hutsons is Mr. Hutson's testimony that he and his wife each smoke approximately a package of cigarettes a day. There is no evidence that either of the Hutsons, or anyone else, was smoking a cigarette in or near the chair on the day of the fire. Several other people, including the Hutson's two year old child, were in the house at various times during the afternoon and evening in question. There is also no evidence concerning these individuals' contact with cigarettes on the day in question, but it is as reasonable to conclude that one of them mishandled a cigarette as it is to conclude that Mr. and Mrs. Hutson did so. After Mrs. Oliver presented evidence that a cigarette was the offending instrumentality, she was required to present evidence supporting a reasonable inference that the Hutsons were in control of the cigarette. Although she was not required to completely eliminate the possibility of other negligent smokers or causes, nevertheless, "their likelihood must be so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the [Hutsons'] door." *Mobil Chemical Company v. Bell*, 517 S.W.2d 245, 251 (Tex.1974). One may speculate about the Hutsons' actions, but mere surmise or suspicion is not probative evidence. Without more, Mrs. Oliver failed to present probative evidence sufficient to raise a fact question on control of the offending instrumentality. She failed, therefore, to raise a fact question as to the negligence of the Hutsons and, thus, the

---

3. A substantial amount of testimony from several witnesses was given while pointing to or discussing a drawing of the residence. That drawing was not made a part of the record, however, and as a result, much of the testimo-ny is incomprehensible to this court. We urge counsel in all cases to be certain that everything needed for a clear understanding of the evidence is included in the appellate record.

trial court correctly directed a verdict against her.

█ Mrs. Oliver's argument in this court is predicated on the theory that the Hutsons' control of the residence satisfies the "control" element. *Mobil Chemical Company v. Bell, supra,* at 252 recognized that disputes may arise as to what instrumentality caused the injury. The court stated, however, that the control requirement must be interpreted in the factual setting of each case. *Id.* at 252. As stated in an article by Starling Thomas Morris, "A devastating force may pass through various mediums and forms before finally assuming the state which inflicts the ultimate harm. The important consideration is that the defendant have control over those instrumentalities in the chain with which negligence was mostly [*sic*] likely associated." Morris, *Res Ipsa Loquitur in Texas,* 26 Texas L.Rev. 257, 264–65 (1948). Under Mrs. Oliver's theory, a burning cigarette was in some manner deposited in the chair, where it smoldered until the vinyl gases it released were ignited. From the chain of events presented by Mrs. Oliver, the cigarette is the instrumentality in the chain with which negligence was most likely associated. Control of the residence is not probative evidence of control of the offending instrumentality; that is, the cigarette.

Mrs. Oliver relies on *Graham v. Oak Park Mobile Homes, Inc.,* 546 S.W.2d 394 (Tex. Civ.App.—Corpus Christi 1977, no writ) as support for her contentions. In *Graham,* unlike the case now before this court, there was probative evidence of both *res ipsa* elements.

Mrs. Oliver has failed to demonstrate reversible error. The judgment of the trial court is, therefore, affirmed.