672 A.2d 129 (1996)
108 Md. App. 408
Mary Alice VITO
v.
SARGIS & JONES, LTD. et al.
No. 596, Sept. Term, 1995.
Court of Special Appeals of Maryland.
February 29, 1996.
*131 Monroe Jon Mizel, Kingsington, for appellant.
Thomas Patrick Ryan (McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellee, Sargis & Jones.
Denise A. Greig (Semmes, Bowen & Semmes, on the brief), Baltimore, for appellee, Cogan Kibler, Inc.
Argued before HOLLANDER and SALMON, JJ., and PAUL E. ALPERT, Judge (Retired), Specially Assigned.
*130 SALMON, Judge.
In this appeal we are called upon to analyze the doctrine of res ipsa loquitur. Three questions are presented:
1. Did plaintiff/appellant [Mary Vito] waive reliance on the doctrine of res ipsa loquitur by attempting to establish specific acts of negligence on the part of defendants Cogan Kibler, Inc. and Sargis & Jones Ltd.?
*132 2. Did the trial court err in granting Cogan Kibler, Inc.'s motion for judgment?
3. Did the trial court err in granting the motion for judgment of Sargis & Jones, Ltd.?

FACTS[1]
Sargis & Jones, Inc. (Sargis & Jones) is a general contractor. It was hired to renovate certain bathrooms and storage spaces at the USA Today building ("the Building") located in Silver Spring, Maryland. Michael Clough, project manager, and Ramone Estevan, project superintendent, were both employed by Sargis & Jones to supervise the renovation of the Building. Sargis & Jones subcontracted out all of the work to be done. Its function was to schedule and coordinate the work of the subcontractors. Numerous subcontractors were hired for the project. Sargis & Jones hired Cogan Kibler, Inc. (Cogan Kibler), a painting subcontractor, to paint portions of the Building. John Dray, an experienced painter, was an employee of Cogan Kibler.
Renovation work commenced on the Building sometime in April 1990. Sargis & Jones's project supervisor, Michael Clough, scheduled Cogan Kibler to paint the Building's interior walls on May 11, 1990. Mr. Dray was told by his supervisor, Dave Cogan, to go to the Building and apply Duron stain killer paint primer (hereafter "paint primer") to one of the walls. Mr. Dray arrived at the Building sometime before noon. He poured the paint primer into a tray and, using a roller, began to apply it to a wall. Mr. Dray, the only employee of Cogan Kibler at the Building on May 11, 1990, painted for 20 to 30 minutes.
The area where Mr. Dray was painting was partially separated by a heavy, translucent plastic barrier from the area where USA Today employees worked. A large gap existed, however, in the barrier. The record does not reveal exactly how big the gap was or whether any doors or windows were open in the project area or elsewhere in the building. Moreover, the record does not show whether Mr. Dray painted near any air conditioning or ventilation ducts, nor was it shown whether employees of other subcontractors were present when Mr. Dray applied the paint primer.
On the morning of May 11, Mary Vito (an asthmatic) was working in a large, open room adjacent to the project area where Mr. Dray was painting. This open room contained approximately seventy work stations, one of which was Ms. Vito's. During most of the morning of May 11, she uneventfully sat at her work station and performed her duties as a USA Today customer service representative.
Sometime before noon on May 11, while Ms. Vito still sat at her work station, she detected an unusual odor, which she did not otherwise describe. Simultaneously, she felt a burning sensation in her throat, and she then "passed out." About the same time, co-employees of Ms. Vito also complained "that their eyes were burning[,] ... their throats were hurting and they weren't feeling well." Because of these problems, a supervisor instructed USA Today employees to evacuate the building. Ms. Vito and approximately six other employees were then transported by ambulance to Holy Cross Hospital. The other employees were treated and released shortly after arrival, but Ms. Vito remained in the hospital for several hours.
About the same time as the room adjacent to the project area was being evacuated, Ramone Estevan, the Sargis & Jones on-site project superintendent, instructed Mr. Dray to stop painting because "somebody had complained about the smell." Mr. Dray immediately stopped his work and, about fifty minutes later, left the Building.
Ms. Vito called two medical doctors as witnesses. Their testimony, if believed by the jury, established that Ms. Vito suffered permanent lung damage as a result of inhaling the fumes from the paint primer on May *133 11, 1990.[2]
Ms. Vito introduced into evidence a label from a can of the paint primer. The can was similar to the one used by Mr. Dray. The warning label on the can read:
To avoid breathing vapors or spray mist, open windows and doors or use other means to ensure fresh air entry during application and drying. If you experience eye watering, headaches or dizziness, increase fresh air or wear respiratory protection... or leave the area. Close container after each use. Avoid contact with skin.
FIRST AID: If swallowed, do not induce vomiting. Call physician immediately.
Use With Adequate Ventilation. NOTICE: Reports have associated repeated and prolonged occupational over-exposure to solvents with permanent brain and nervous system damage. Intentional misuse by deliberately concentrating and inhaling the contents may be harmful or fatal.
(Emphasis in original.)
Counsel for Ms. Vito read to the jury excerpts from a deposition of Mr. Clough, Sargis & Jones's project manager. He was questioned about what safety procedures were utilized when potentially toxic (poisonous) substances were in use. Mr. Clough asserted that he was unaware of anybody who might be sensitive to any product used at any project where Sargis & Jones was the general contractor. He acknowledged, however, that Sargis & Jones did not require its employees to investigate whether any potentially sensitive person would be present in the vicinity of potentially injurious substances. More specifically, Mr. Clough admitted that none of Sargis & Jones's employees determined, on the day in question or at any other time, whether anyone who worked at USA might be harmed by the application of paint or paint primer. He admitted that Sargis & Jones's personnel occasionally informed building users in the area about the type of work being donefor example, he acknowledged that if he knew that a pregnant woman was on the premises, and if he thought that a product that was being used might be injurious to her, he, or another employee, would warn her.
At the close of Ms. Vito's case, her counsel admitted that she had not produced direct evidence of negligence on the part of either defendant. Ms. Vito's counsel contended, however, based on the theory of res ipsa loquitur, that the issue of negligence should be submitted to the jury. Sargis & Jones and Cogan Kibler made motions for judgment in their favor on the ground that Ms. Vito's evidence was insufficient to take the case to the jury on the theory of res ipsa loquitur because she had failed to prove that either defendant had exclusive control of the instrumentality that caused plaintiff harm. Counsel for Sargis & Jones also contended that Ms. Vito had waived her right to rely on the res ipsa loquitur doctrine because she had attempted to prove direct negligence. The trial court took the motions under advisement and instructed defense counsel to proceed.
The defense called two witnesses, but before either defendant had concluded their case, the trial judge ruled on defendants' motions for judgment. The court opined that Ms. Vito had not waived her right to rely on res ipsa loquitur by going "too far in [her] proof of the explanation of the cause of the injury." Moreover, the court accepted as true Ms. Vito's proof that she was injured by the fumes from the paint primer. The trial judge ruled, however, that Ms. Vito had failed to establish exclusive control over the condition or instrumentality that caused the harm. After defendants' motions for judgment were granted, this timely appeal followed.
Additional facts will be presented to answer the questions presented.

STANDARD OF REVIEW
When reviewing the grant of a motion for judgment, we examine the evidence and all *134 inferences reasonably deducible therefrom in the light most favorable to the non-moving party. Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc., 283 Md. 296, 327-28, 389 A.2d 887 (1978); Campbell v. Montgomery County Bd. of Educ., 73 Md.App. 54, 63, 66, 533 A.2d 9 (1987). Ordinarily, we will not affirm a judgment for a reason not relied upon by the trial court. Warner v. German, 100 Md.App. 512, 517, 642 A.2d 239 (1994) (quoting Cheney v. Bell Nat. Life Ins. Co., 315 Md. 761, 764, 556 A.2d 1135 (1989)). See also Geisz v. Greater Baltimore Medical Center, 313 Md. 301, 314, n. 5, 545 A.2d 658 (1988).
The trial court, when ruling on a motion for judgment, should make the initial determination of whether the inference of negligence is permissible, i.e., more probable than not. If the court decides that this inference is permissible, it should then submit the issue to the jury to determine finally whether the inference is more probable than not. Short v. Wells, 249 Md. 491, 495-96, 240 A.2d 224 (1968). If, as here, the lower court decides that the inference is impermissible, an appellate court will review the court's decision and decide whether it was legally correct.

Res Ipsa Loquitur
In a negligence action, plaintiff, of course, has the burden of proving defendant's negligence. Harris v. Otis Elevator Co., 92 Md.App. 49, 51, 606 A.2d 305 (1992). The burden of proof requires plaintiff to produce evidence that will permit the trier of fact to conclude that it is "more likely than not" that defendant's negligence caused plaintiff's injuries. C. & P. Tel. Co. v. Hicks, 25 Md.App. 503, 526, 337 A.2d 744, cert. denied, 275 Md. 750 (1975). The doctrine of res ipsa loquitur allows a plaintiff "the opportunity to establish a prima facie case `when he [or she] could not otherwise satisfy the traditional requirements for proof of negligence.' " Dover Elevator Co. v. Swann, 334 Md. 231, 236, 638 A.2d 762 (1994) (quoting Pahanish v. Western Trails, Inc., 69 Md. App. 342, 359, 517 A.2d 1122 (1986)). The doctrine applies where "direct evidence of negligence is either lacking or solely in the hands of the defendant." Dover Elevator, supra, 334 Md. at 237, 638 A.2d 762.
The doctrine does not change the burden of proof, but it does allow the question of negligence to reach the jury by providing a permissible inference of negligence. Hicks, supra, 25 Md.App. at 526-27, 337 A.2d 744. See also Dover Elevator, supra, 334 Md. at 236, 638 A.2d 762 (stating that "[t]he jury is ... permitted, but not compelled, to infer a defendant's negligence without the aid of any direct evidence"). When plaintiff relies on circumstantial evidence to establish negligence, the inferences deducible from the facts presented "must warrant a finding that the defendant's conduct was such that a jury would be entitled to characterize it as negligent." Hicks, supra, 25 Md.App. at 524, 337 A.2d 744.
"[T]he doctrine is applicable only where the `foundation fact' establishing the cause of the injury (or the thing which caused the injury) has been established." STUART M. SPEISER, THE NEGLIGENCE CASE: RES IPSA LOQUITUR § 2:9, at 48 (1972). If plaintiff provides no explanation of the cause of his or her injury or merely provides several equally reasonable inferences, then the attempt to rely on res ipsa loquitur will fail. See, e.g., Benedick v. Potts, 88 Md. 52, 54, 40 A. 1067 (1898) (holding that res ipsa loquitur was not applicable because the plaintiff could not present a single circumstance showing how or by what agency his injury occurred).
Once this foundational fact is shown, in order for the doctrine of res ipsa loquitur to be applicable, plaintiff must prove, by a preponderance of the evidence:
1. A casualty of a sort that usually does not occur in the absence of negligence on the part of someone,
2. caused by an instrumentality or condition within the defendant's exclusive control,
3. under circumstances indicating that the casualty did not result from the act or omission of the plaintiff. Leikach v. Royal Crown Bottling Co., 261 Md. 541, 547-48, 276 A.2d 81 (1971); Swann v. Prudential Ins., 95 Md.App. 365, 389, 620 A.2d 989 (1993); rev'd *135 other grounds, sub nom, Dover Elevator Co. v. Swann, supra.; Hicks, supra, 25 Md.App. at 516, 337 A.2d 744; Beach v. Woodward and Lothrop, Inc., 18 Md.App. 645, 649, 308 A.2d 439.

I. DID MS. VITO WAIVE THE RIGHT TO RELY ON THE RES IPSA LOQUITUR DOCTRINE?

Maryland cases have held that a plaintiff may not rely on the doctrine of res ipsa loquitur if he or she attempts to establish the specific grounds of defendant's negligence. Dover Elevator, supra, 334 Md. at 237, 638 A.2d 762; Peterson v. Underwood, 258 Md. 9, 20, 264 A.2d 851 (1970); Nalee, Inc. v. Jacobs, 228 Md. 525, 532, 180 A.2d 677 (1962); Smith v. Bernfeld, 226 Md. 400, 409, 174 A.2d 53 (1961). This principle is derived from Hickory Transfer Co. v. Nezbed, 202 Md. 253, 263, 96 A.2d 241 (1953), in which the Court stated:
In this case the plaintiffs themselves proved the details of the happening, foregoing reliance on res ipsa loquitur; and, having undertaken to prove the details, they failed to show negligence on the part of the defendants. Indeed, they explained away the possible inference of negligence. Paradoxically, the plaintiffs proved too much and too little.
The question arises as to the exact meaning of the phrase "attempted to establish the specific grounds of defendant's negligence." Does it mean, for instance, that a plaintiff waives reliance on the doctrine of res ipsa loquitur if plaintiff merely calls a defendant as an adverse witness and tries unsuccessfully to get the defendant to admit some lack of due care? We hold that the answer to this question is "no."
The majority rule in this country is:
[A]n unsuccessful attempt to prove specific negligence on the defendant's part, or the introduction of evidence of specific negligence not clearly establishing the precise cause of injury, will not deprive the plaintiff of the benefits otherwise available under the doctrine [of res ipsa loquitur].
Annotation, Evidence of Specific Negligence as Affecting Reliance on Res Ipsa Loquitur, 33 A.L.R.2d 791, 793 (1954).
As shown by Blankenship v. Wagner, 261 Md. 37, 273 A.2d 412 (1971), Maryland follows this majority rule. In Blankenship, supra, the Court of Appeals undertook to explain the waiver rule by discussing Smith v. Bernfeld, and Nalee v. Jacobs, both supra. Judge Finan, for the Court, stated:
Early in this Court's consideration of res ipsa loquitur we held that when a plaintiff relies on the doctrine and its attendant inferences, it must not appear from the plaintiff's own evidence that something other than the defendant's negligence caused the accident. This concept was logically extended so that "where all the facts and circumstances are shown by testimony," whether it was introduced by plaintiff or defendant, and that evidence shows that the injury might have been caused by something other than the defendant's negligence, res ipsa loquitur would not apply, because there would no longer be any need for relying on an inference. In Smith v. Bernfeld, Chief Judge Brune, speaking for the Court, stated that the attempt by the plaintiffs in that case to prove specific grounds of negligence precluded their relying on the doctrine of res ipsa loquitur. However, in Nalee, Inc. v. Jacobs, an opinion also written by Chief Judge Brune only 7 months after Smith v. Bernfeld, he explained that the attempts by the plaintiffs in Smith to establish specific grounds of negligence had precluded their relying on res ipsa loquitur only because they had proved all of the facts regarding the accident and were unable to show that the defendant's negligence caused the injury. He specifically disavowed any intention in Smith of extending the rule of the earlier cases....

If the plaintiff has circumstantial evidence which tends to show the defendant's negligence (and which is therefore consistent with the inference relied upon in res ipsa loquitur) he should not as a matter of policy be discouraged from coming forth with it. If, however, the evidence introduced by the plaintiff or the defendant *136 shows that everything relative to the case is known, and that the injury might have been caused by something other than defendant's negligence (thereby negating the inference normally relied upon in res ipsa loquitur), then the plaintiff will not be allowed to avail himself of the doctrine. In such a case, if plaintiff's proof fails to make out a prima facie case of negligence then it is proper to direct a verdict for the defendant.
Id., 261 Md. at 45-46, 273 A.2d 412 (citations omitted) (emphasis added in part).
In Dover Elevator, supra, the plaintiff produced an expert who testified that he inspected the elevator that had misleveled and caused plaintiff's injuries. Additionally, the expert reviewed all of the maintenance records pertaining to the elevator.[3] The expert opined that: 1) the elevator misleveled because defendant Dover Elevator negligently filed and cleaned the number 14 and 15 contacts, rather than replacing them as it should have, resulting in faulty current and misleveling; 2) defendant "was negligent by failing to spend adequate time servicing the elevators;" 3) Dover Elevator's "maintenance records were deficient;" and 4) defendant "failed to properly stock replacement parts in the elevator's machine rooms." Dover Elevator, supra, 334 Md. at 235, 638 A.2d 762.
The trial court in Dover Elevator refused to give a res ipsa loquitur instruction, and the jury found in favor of Dover Elevator and all other defendants. This Court reversed as to the elevator company and held, inter alia, that plaintiff has not waived application of the doctrine by "proving too much and too little." Swann, supra, 95 Md.App. at 418, 620 A.2d 989. Chief Judge Wilner filed a dissent in Swann and said, in pertinent part:
[A]lthough I quite agree that, under current Maryland law, the mere offering of evidence of specific negligence does not, of itself, preclude a jury, upon a proper res ipsa loquitur instruction, from inferring negligent conduct, it seems to me that the plaintiff did prove (or attempt to prove) too much for the doctrine to apply in this case. He marshalled evidence to show the precise cause of the mislevelingthe malfunction of the contactsand to show as well that Dover was negligent in not replacing those contacts prior to the accident. The focus of the case was on whether Dover was remiss in merely cleaning the contacts rather than replacing them.
When the plaintiff's case is so built around a specific, articulated cause of the event and endeavors to show that that cause arose solely because of specific negligence on the defendant's part, I do not believe that the plaintiff, if he fails to persuade the jury that his position has merit, can then avail himself of an inference that the event arose from some other cause, also engendered by the defendant's negligence.
Swann, 95 Md.App. at 418-19, 620 A.2d 989.
The Court of Appeals adopted the reasoning of Judge Wilner's dissent, Dover Elevator, supra, 334 Md. at 246-47, 638 A.2d 762, and reversed. It pointed out that plaintiff's expert examined the elevator and gave an opinion as to what caused the accident. Under such circumstances, it was obvious that
the principal evidence of the apparent cause of the accident was fully available to the plaintiff. Consequently, "the facts and the demands of justice" do not make the application of res ipsa loquitur essential under the circumstances of this particular case.
Id. at 247, 638 A.2d 762 (citations omitted). A second, yet related, reason for reversal was that plaintiff's expert "purported to offer an expert opinion regarding the actual and specific negligence [on defendant's] part...." Id. at 249, 638 A.2d 762. Thus, the case was not one in which the jury was given certain facts and asked to draw certain inferences. Rather, the jury was asked to draw no inferences but to accept as true the testimony of the expert "concerning why negligence must have been the cause of the accident." Id.
The Dover Elevator Court concluded:
Thus Swann ventured beyond the mere offering of some evidence of negligence as *137 asserted by the Court of Special Appeals. See Swann, 95 Md.App. at 395-96 [620 A.2d 989]. We therefore conclude that the reasoning of Hickory Transfer Co. v. Nezbed is dispositive of the issue, and Swann sought to prove "too much and too little." 202 Md. at 263 [96 A.2d 241]. Swann sought to prove too much because his expert's testimony endeavored to establish the specific causes of elevator number two's misleveling, thereby precluding his reliance on res ipsa loquitur. On the other hand, he apparently proved too little because Moynihan's [plaintiff's expert] testimony failed to persuade the jury, as evidenced by the verdict in favor of all the defendants.
Id. at 253, 638 A.2d 762.
In this appeal, Sargis & Jones argues that the trial judge was wrong when he ruled that Ms. Vito had not waived her right to rely on res ipsa loquitur.[4] Its entire argument in this regard is as follows:
[I]n the instant case the Plaintiff attempted to introduce evidence through deposition testimony of John Dray and Michael Clough, as well as the label of the Duron Stain Killer, to attempt to show some negligence. Counsel for Vito conceded that such showing had been appropriately made, which is clear from the record and was accepted by the Trial Court. Having made that attempt, Vito could not under the law attempt to then raise res ipsa loquitur in an effort to get her case to the jury.
It is true that the paint primer label warned that users must have adequate ventilation and that counsel for Ms. Vito questioned Mr. Dray and Mr. Clough regarding that subject. Mr. Dray's and Mr. Clough's answers, if believed, however, gave no meaningful information as to how the premises were ventilated. The witnesses claimed not to know if there was any outside ventilation in the room where paint primer was applied, and Mr. Dray could not say whether he painted near air conditioning or ventilation ducts. Mr. Clough was asked about what warnings his company gave, but his answers, if believed, did not show that warnings should have been given in this case.
In order to waive reliance on res ipsa loquitur, a plaintiff must present evidence that, if believed, proves the specific negligent act(s) on defendant's part. Dover Elevator, supra, 334 Md. at 246-47, 638 A.2d 762. Here, plaintiff put on no evidence that, if believed, showed a specific act of negligence on the part of either defendant. Therefore, appellant did not waive reliance on res ipsa loquitur.

II. DID THE TRIAL COURT ERR IN GRANTING COGAN KIBLER'S MOTION FOR JUDGMENT?

A. Exclusive Control

The appellees concede that Ms. Vito proved two of the three elements necessary to allow the jury to consider the case on a res ipsa loquitur theory. Appellees admit that Ms. Vito adequately proved Element I (a casualty of a sort that usually does not occur in the absence of negligence on the part of someone) and Element III (that the casualty did not result from the act or omission of the plaintiff).
Appellees maintain, however, that Ms. Vito failed to prove Element II (that the instrumentality or condition that produced plaintiff's injury was in the management or control of the defendant). Lee v. Housing Authority of Baltimore, 203 Md. 453, 462, 101 A.2d 832 (1954); Harris v. Otis Elevator Co., 92 Md.App. 49, 52, 606 A.2d 305 (1992).
As already noted, Ms. Vito proved by expert testimony that her injury was caused by breathing fumes from the paint primer used by Mr. Dray. Appellees do not dispute this but argue that the trial judge was correct when he ruled that the instrumentality that caused the injury was more than the paint primer fumes. The trial court ruled:
[T]he instrumentality [that injured Ms. Vito] consists not only of [the paint primer] fumes themselves but the manner in which... [the fumes] are delivered from one room to the other.

*138 While the paint can is certainly within the exclusive control of the defendants, as evidenced by the plaintiff's proof in this case, there is no evidence that the defendants were in control of what would be viewed as the ... HVAC [heating, ventilation, air conditioning] system or the envelope, the wall-ceiling assembly that surrounds the room that they were in.
There was testimony that some type of temporary barrier had been erected. A plastic sheet was made mention of in the plaintiff's case. There was no testimony that the defendants were in control of that and in fact, I think the testimony was to some extent to the contrary that one of the painters or the supervisor really had no idea how that particular wall was erected or who had erected it.
To analogize this to the example of the barrel falling out of the window that is referred to in many cases, I think it is one situation where the warehouse that the barrel falls out is owned and operated and stored there all by the same defendant.
Obviously, when the barrel rolls out of the warehouse and strikes somebody on the street below it is clear that the defendant somehow has failed in his responsibilities and therefore is negligent.
But, if one defendant owns and operates the warehouse, built it and maintains it but then releases it to various people who store barrels there, and the same barrel rolls out of the window and strikes somebody below, is it a defect in the building? Is it a defect in the maintenance? Is it a default in the way the barrel was stored? Certainly the owner of the barrel is not in charge of and not in sole and exclusive control of the building or its maintenance.
I think that is more like the situation we have here, the instrumentality being not only the fumes but the fashion [by which the fumes] were able to escape the room where they were released and to assault the plaintiff in the other room.
Cogan Kibler adopts the reasoning of the trial court and blithely assumes, without citing any authority, that the instrumentality that caused the harm includes "the delivery system which carried the fumes from the renovation area to the" area where plaintiff worked.[5] There is authority of a sort supporting appellees' position, but it is very unpersuasive. That authority and the concept of control was discussed in Morris, Res Ipsa Loquitur in Texas, 26 TEX.L.REV. 257, 263-65 (1948):
Although an accident may be established as a type which does not ordinarily happen unless someone was negligent, the circumstances must point an accusing finger at the defendant if he is to be held liable for negligence. This is the function of the requirement that the accident be caused by instrumentalities under the management and control of the defendant. But some questions may arise as to its meaning.
Frequently the requirement is phrased as "the instrumentality causing the harm," and in a large number of cases a thing under defendant's management can be easily and simply identified as the instrumentality causing the harm. If defendant's water tank, light fixture, ceiling plaster, store window, or brick wall suddenly falls upon plaintiff or his property, there is no hesitation in saying that the instrumentality which defendant controlled was the one which inflicted the harm. The same may be said if defendant's hoisting machinery suddenly drops a worker back into a mine shaft, or his crane suddenly drops a load of logs upon plaintiff, or the car which he is driving hurtles off the road at a corner injuring plaintiff passenger, or its boxcar door knocks plaintiff down at a public crossing, or its closing bus door breaks plaintiff's collar bone, or his unoccupied automobile smashes into plaintiff's house at the foot of a hill. But in other situations control of the instrumentality inflicting the injury is less clear and direct. And in at least one Texas case the court has approved a most ingenious theory about the meaning of the phrase "the instrumentality causing the harm." Plaintiff, a guest in defendant's hotel, was injured when she was forced to jump from *139 the third floor because a fire had cut off escape by the ordinary exits. She relied upon res ipsa loquitur to establish negligence of defendant in permitting the fire to start in the porters' closet in the lobby. The court in refusing to apply res ipsa loquitur said the fire was the thing causing the harm while the porters' closet was the thing under the defendant's control. It might as well have said the thing causing the harm was the ground which plaintiff struck! A similar contention that an unknown spark which set off the explosion at defendant's gasoline loading rack was the instrumentality causing the harm was denied in Tyreco Refining Co. v. Cook. It is obvious that no such artificial play on words should be controlling. A devastating force may pass through various mediums and forms before finally assuming the state which inflicts the ultimate harm. The important consideration is that the defendant have control over those instrumentalities in the chain with which negligence was mostly [sic] likely associated.
(Emphasis added.)
In St. Johns Hosp. & Sch. of Nursing v. Chapman, 434 P.2d 160, 166 (Okl.1967), the Supreme Court of Oklahoma described the instrumentality as "a set of circumstances, a situation, that speaks for itself and says that negligence on the part of the defendant must have been involved." See also 57B AM. JUR.2D NEGLIGENCE § 1870 (1989) (stating that the instrumentality "must be accepted in a much broader sense than as a perceptible object") (footnotes omitted).
We hold that the delivery system (that carried the paint primer fumes) was not the "instrumentality" that caused the harm. As explained in Bohlen v. Glenn L. Martin Co., 193 Md. 454, 460, 67 A.2d 251 (1949):
In order to establish this doctrine of res ipsa loquitur, one of the essential elements required is that the thing which is the proximate and natural cause of the injury is wholly in the possession and control of the one party or the other. The independent neglect of another as the efficient and proximate cause of the injury must be excluded.
(Emphasis added).
Proximate cause exists "where there is a complete continuance and unbroken sequence between the act complained of and the act finally resulting in the injury, so that the one may be regarded by persons of ordinary judgment as the logical and probable cause" of the injury. Lashley v. Dawson, 162 Md. 549, 562, 160 A. 738 (1932). Plaintiff's experts, if believed, established that the paint primer was the proximate cause of the plaintiff's injury. There was no evidence that the delivery system, or any other instrumentality, proximately caused the injury. Persons of ordinary judgment plainly could believe that there was a complete continuance and unbroken sequence between the release of the paint primer fumes and the inhalation of these fumes by plaintiff. Several out-of-state cases reach a similar result.
In Smith v. Little, 626 S.W.2d 906 (Tex.Ct. App.1981), fuel was poured onto a bedroom carpet. The fuel was ignited, and plaintiff was injured. Plaintiff contended that "the instrumentality for res ipsa purposes [was] the bedroom carpet upon which the flammable liquid was poured." Id. at 626 S.W.2d at 908. The Court noted, however, that "control of the residence is not probative evidence of control of the offending instrumentality." Id. (citing Oliver v. Hutson, 596 S.W.2d 628, 632 (Tex.Civ.App.1980)). The Smith Court held that the offending instrumentality was the fuelnot the rug.
In Oliver v. Hutson, supra, plaintiff's proof showed that a cigarette was dropped onto a vinyl chair. The chair burned and gave off a highly flammable gas. The gas spread to other parts of the house and was ultimately ignited causing an explosion and fire. 596 S.W.2d at 632. The Oliver Court concluded that the burning cigarette "was the offending instrumentality" and not the vinyl chair or the gas that was released when the cigarette heated the chair. Id. To the same effect, see Victory Park Apts. v. Axelson, 367 N.W.2d 155, 160 (N.D.1985), stating "it is clear that the `thing' or instrumentality under those circumstances [cigarette dropped *140 between cushions of couch] was the cigarette and not the couch or apartment."
The case of Chutuk v. Southern Gas Co., 21 Cal.2d 372, 132 P.2d 193 (1942), involved a gas explosion that occurred when plaintiff was repairing a manhole in a sewer line. Defendant's gas line ran parallel to the sewer line, and gas escaped from defendant's distribution system as plaintiff was chipping off a concrete rough spot in the manhole. The chipping operation caused a spark, which, in turn, ignited the gas. The Court said:
The first phase of defendant's argument seems to resolve itself into a claim that as the place of the accident was not under the exclusive control of defendant and as the gas which had escaped from defendant's distributing system to the place of the accident was no longer under defendant's exclusive control, the essential requirement of exclusive control by defendant of the "instrumentality" causing the injury was lacking. We do not believe, however, that it was essential for the application of the doctrine that defendant should have had either exclusive control of the place where the accident occurred or exclusive control of the gas at the time and place the accident occurred. See Juchert v. California Water Service Co., 16 Cal.2d 500, 106 P.2d 886, Chutuk v. Southern California Gas Co., 218 Cal. 395, 23 P.2d 285; Brunig v. Pacific Gas & Electric Co., 140 Cal.App. 254, 35 P.2d 226; Buffums' v. City of Long Beach, 111 Cal.App. 327, 295 P. 540; Breidenbach v. M. McCormick Co., 20 Cal. App. 184, 128 P. 423; 19 Cal.Jur. 709. The cited authorities clearly indicate that it is sufficient that defendant had exclusive control of its distributing system under Friends Street; that gas would not ordinarily have escaped therefrom in dangerous quantities in the absence of negligence on the part of the defendant; and that gas did escape therefrom in dangerous quantities thereby causing the injuries at a place in said street in close proximity to the distributing system.

Id., 132 P.2d at 194 (emphasis added).
We, like the Chutuk Court, do not believe that the plaintiff was required to prove that the defendants had exclusive control over the place where the injury occurred or the system that delivered toxic fumes to Ms. Vito's lungs. It was sufficient to show, as Ms. Vito did, that Mr. Dray, an agent of Cogan Kibler, had exclusive control of the paint primer, which was the instrumentality that caused the harm.

B. Plaintiff's Access to Information

Discussing res ipsa loquitur, the Court of Appeals has stated,
The justice of the rule ... is found in the circumstance that the principal evidence of the true cause of the accident is accessible to the defendant, but inaccessible to the victim of the accident. The rule is not applied by the courts except where the facts and demand of justice make its application essential....
Blankenship, 261 Md. at 41, 273 A.2d 412 (quoting Potts v. Armour & Co., 183 Md. 483, 488, 39 A.2d 552 (1944)). Relying on this statement, Cogan Kibler contends that the doctrine is here inapplicable because Ms. Vito had sufficient access to information surrounding the May 11 event to eliminate the need for reliance upon the doctrine. Cogan Kibler asserts that Ms. Vito had access to the results of investigations that the "building owners would have conducted" and that fire and ambulance personnel "obviously" conducted. One difficulty with this argument is that there is not a scintilla of evidence that Ms. Vito, in fact, had access to such information. Indeed, there was no evidence that such information existed.
In any event, even if Ms. Vito did have access to reports concerning the accident, such access does not preclude application of the doctrine. If the rule were otherwise, the usefulness of the doctrine would be virtually eliminated because, in this age, accident reports accompany almost every accident.
No Maryland case has held that the doctrine was inapplicable because plaintiff had failed to show lack of access to adequate information. Although the Court of Appeals has recently acknowledged the language from Blankenship quoted above, it did so in the context of a plaintiff who had knowledge of the specific negligent act that caused the accident. Dover Elevator, supra, 334 Md. at *141 253-54, 638 A.2d 762 (precluding recourse to the doctrine because plaintiff showed the precise acts of defendant's negligence). This theme is echoed by other decisions employing similar language. See Safeway Stores, Inc. v. Bolton, 229 Md. 321, 329, 182 A.2d 828 (1961) (doctrine not applicable because plaintiff "produced all the circumstances surrounding the accident."); Coastal Tank Lines v. Carroll, 205 Md. 137, 144-45, 106 A.2d 98 (1954) (same).
Commentators acknowledge that many courts pay homage to the notion that the res ipsa doctrine does have a fourth element. "At any rate the notion persists that one of the foundations of res ipsa loquitur is defendant's superior access to the facts. Certainly the notion has not been and should not be made into a hard and fast rule." HARPER ET AL., THE LAW OF TORTS § 19.9, at 62 (2d ed. 1986). See also KEETON ET AL., PROSSER AND KEETON ON TORTS § 39, at 255 (5th ed. 1984) ("But it [accessibility] cannot be regarded as an indispensable requirement, and there are few cases in which it can be said to have had any real importance."). The Restatement provides that the defendant's superior knowledge as to how the event occurred is not a requirement for the application of the doctrine. RESTATEMENT (SECOND) OF TORTS § 328D cmt. k. For these reasons, we do not read the Maryland law to be that plaintiff is required to prove this fourth factor.

C. Complicated Questions of Negligence and Proximate Cause

Relying on Orkin v. Holy Cross Hospital, 318 Md. 429, 569 A.2d 207 (1990), Cogan Kibler additionally argues that the doctrine is not applicable because this case presents complex issues of science, engineering, and medicine that warrant expert assistance. The plaintiff in Orkin attempted to employ res ipsa loquitur to prove negligence in her medical malpractice case. Preliminarily, the Orkin Court noted,
it is important to distinguish between: 1) the inference of negligence that may properly be drawn by an expert, but could not properly be drawn by a lay juror, and 2) the inference of negligence that may properly be drawn by a lay juror from the facts, unaided by expert testimony. Of the first it might be said that "the thing speaks for itself," at least in terms of what the facts say to the expert. But that may be said of inferences in general, and yet it is not res ipsa loquitur as we know that concept in the law of negligence. In the strictest sense, res ipsa loquitur is limited to those instances where, certain criteria having been met, the trier of fact may draw an inference of negligence from the facts alone.
Id. at 431, 569 A.2d 207 (emphasis added). The Court discussed the agreed-upon facts and observed that the case was not one of "obvious injury." Id. at 433, 569 A.2d 207. The Court then stated:
Resolution of the issues of negligence and causation involved in a case of this kind necessarily requires knowledge of human anatomy, medical science ... and standards of care. Complex issues of the type generated by a case of this kind should not be resolved by laymen without expert assistance. Res ipsa loquitur does not apply under these circumstances.
Id. at 433, 569 A.2d 207.
In Meda v. Brown, 318 Md. 418, 425, 569 A.2d 202 (1990), the companion case to Orkin, the Court stated:

Res ipsa loquitur, as we now utilize that concept in the law of negligence, means that in an appropriate case the jury will be permitted to infer negligence on the part of a defendant from a showing of facts surrounding the happening of the injury, unaided by expert testimony, even though those facts do not show the mechanism of the injury or the precise manner in which the defendant was negligent.
(Emphasis added.)
Ms. Vito properly invoked res ipsa loquitur because she presented evidence from which the jury could infer negligence without the aid of expert testimony. Whether the jury may require expert assistance to resolve other issues in dispute, such as the issue of what instrumentality caused the injury, does not affect this determination.
Ms. Vito's experts were not asked to draw an inference of appellees' negligence. Her *142 experts were called only to establish what thing or condition caused her harm. As stated earlier, she was required to make such a showing as a foundation fact. Once the foundation fact was shown, her case was uncomplicated and an expert was not needed to prove any of the three res ipsa loquitur elements.
Ms. Vito has established all of the elements necessary to invoke the doctrine of res ipsa loquitur against Cogan Kibler. The trial court's entry of judgment was not legally correct because the jury could have properly inferred that Ms. Vito's injury was probably caused by some negligent act on the part of Cogan Kibler. See Apper v. Eastgate Assocs., 28 Md.App. 581, 591, 347 A.2d 389 (1975).

III. DID THE TRIAL JUDGE ERR IN GRANTING JUDGMENT IN FAVOR OF SARGIS & JONES?

Cogan Kibler, who filed a cross-claim for contribution against Sargis & Jones, and Ms. Vito assert that Sargis & Jones had joint control with Cogan Kibler over the paint primer. This contention would have merit only if Cogan Kibler and Sargis & Jones had joint control over Mr. Dray or if it could be shown that Sargis & Jones was otherwise vicariously responsible for Mr. Dray's actions.
Sargis & Jones's agents merely scheduled when Mr. Dray should paint, told him to stop painting when USA Today employees complained about the paint smell, and pointed out what wall was to be painted. There is no evidence showing that Sargis & Jones instructed Mr. Dray as to how to perform his task, nor is there any evidence showing that Sargis & Jones had the power to alter the method or speed by which Mr. Dray completed his painting project.
The case of I.A. Construction Corp. v. Equiptec, Inc., 95 Md.App. 574, 622 A.2d 206, cert. denied, 331 Md. 480, 628 A.2d 1067 (1993), presented an analogous question. In that case, a supervisory employee of a general contractor instructed an inexperienced employee of its subcontractor as to how to hook up air lines during the erection of an asphalt plant. The supervisor ordered the subcontractor's worker to hook up the lines, which the worker did, albeit incorrectly. Id. at 582, 622 A.2d 206. Quoting Standard Oil Co. v. Anderson, 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909), we stated: "Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking." Id. at 581, 622 A.2d 206. In Equiptec, the Court held that the general contractor was not vicariously liable for the acts of the subcontractor's worker. Id. at 582, 622 A.2d 206. "To hold otherwise would subject contractors to vicarious liability each time one of their employees assisted or cooperated with a subcontractor's worker in the completion [of] work included under an existing contract." Id.
As far as is shown by Ms. Vito's evidence, the relation between Mr. Dray and Sargis & Jones was one of mutual cooperationthere was no master-servant relationship shown. Therefore, we affirm the trial court's grant of Sargis & Jones's motion for judgment as against Ms. Vito. Our holding in this appeal does not dispose of Cogan Kibler's cross-claim, which was rendered moot by the grant of Cogan Kibler's successful motion for judgment against Ms. Vito. At the point the motion was granted, Cogan Kibler had not completed its case. Cogan Kibler will be granted an opportunity to complete the presentation of its cross-claim at a new trial.
JUDGMENT IN FAVOR OF SARGIS & JONES, INC., AGAINST MARY VITO AFFIRMED; JUDGMENT IN FAVOR OF COGAN KIBLER, INC., AGAINST MARY VITO REVERSED; CASE REMANDED FOR NEW TRIAL ON MARY VITO'S CLAIM AGAINST COGAN KIBLER, INC. AND COGAN KIBLER, INC.'S CROSS-CLAIM AGAINST SARGIS & JONES, INC.; COSTS TO BE PAID 50% BY COGAN KIBLER, INC. AND 50% BY MARY VITO.
NOTES
[1] Because the trial court granted a motion for judgment, the facts produced at trial and all permissible inferences that may be drawn from those facts are set forth in the light most favorable to the non-movantMary Vito. Md.Rule 2-519(b).
[2] This testimony, for purposes of appeal, was stipulated to by the litigants. The evidence was presented to the jury by way of depositions, which Ms. Vito's counsel read to the jury. Neither the depositions nor a transcript of what was read to the jury is contained in the record on this appeal.
[3] Swann v. Prudential Ins. Co., 95 Md.App. 365, 374, 620 A.2d 989 (1993).
[4] Appellee Cogan Kibler did not join in this argument either below or on appeal.
[5] Sargis & Jones, likewise, cites no case supporting this position.