HANES *v.* STATE, Use of LAMM et al.

[No. 432, September Term, 1963.]

30

*Decided July 16, 1964.*

The cause was submitted to the entire Court.

Submitted on brief by *James McSherry* and *McSherry & Burgee* for the appellant.

Submitted on brief by *Edwin F. Nikirk* and *Robert E. Clapp, Jr.,* for the appellees.

MARBURY, J., delivered the opinion of the Court.

An automobile owned and operated by the appellant, Robert E. Hanes, and in which Wilbur Roland Lamm was a passenger, ran off the road, down an embankment, and turned over. Lamm was killed as a result, and subsequently a suit was instituted on behalf of his widow and children [1] to recover damages resulting from loss of his services and support. The jury rendered a verdict for the equitable plaintiffs after the court had overruled motions for a directed verdict made on behalf of Hanes both at the close of the plaintiffs' case and at the conclusion of the whole case. From judgments entered on the verdict after remittiturs, Hanes appealed.

The accident occurred about ten o'clock on the evening of

---

1. Although the declaration was filed subsequent to the enactment of Ch. 36, Sec. 43 of the Acts of 1962, which amended Code (1957), Art. 67, Sec. 4, by eliminating the requirement that an action for wrongful death be brought "by and in the name of the State of Maryland for the use of" persons entitled to damages, the pre-amendment titling was used. See also Md. Rule Q41 a.

October 19, 1962, when the weather was clear and dry. The car was proceeding north on Route U. S. 15, in Frederick County, about two miles north of the town of Point of Rocks. At this location, the road is twenty-two feet wide and is paved with concrete. Beyond the pavement there is a narrow dirt shoulder of unspecified width about one inch below the concrete, and then the terrain falls away sharply. Appellees' first witness was the state trooper who investigated the accident. He testified he arrived at the scene some twenty-five minutes after the accident, and by that time both occupants of the nearly demolished car had already been taken to a hospital. From measurements made the next day, the officer determined that the car traveled a distance of 193 feet from where it had left the right side of the road, to its final point of rest in a field. There were 23 feet of skid marks on the road. He reconstructed that the car struck a concrete culvert after it left the pavement, turned over an estimated three times, and came to rest upright. Photographs were introduced by appellees showing the damages to the car, the section of the road, and the field at the place the accident occurred.

The next witness to testify for the appellees was Charles E. Toms, whose house was on the east side of Route 15 and nearly abreast of where the car went off the road. He testified he was outside the house when he observed lights on the road and heard a "racket" which he interpreted to mean an accident had occurred. He called his brother from the house and together they went to investigate. They found the car and rendered emergency aid to the men. Hanes had been thrown clear of the car, but Lamm was lying so that his feet were in the car on the passenger side while the remainder of his body was on the ground.

On cross examination the only two questions put to Toms by defense counsel produced as evidence that his house was located about 75 yards from the highway and that there was shrubbery between the house and the road. The redirect examination likewise was brief, but it affected the subsequent proceedings indelibly. It went as follows:

"Q. Just one more question: the lights that you saw bobbing—were they lights from the Hanes car? A. I would say yes.

"Q. Did you see any other lights at that time? A. No, sir, I never took notice of any."

Aside from Corporal Storer of the Maryland State Police, who was put on the stand primarily for purposes of introducing photographs he took at the scene, no other witnesses were called by appellees to testify regarding the liability aspects of the case.

The appellant's interrelated contentions are that there was insufficient evidence of negligence on his part to warrant submission of the case to the jury, and that the doctrine of *res ipsa loquitur* was inapplicable under the facts of this case. The declaration which was not challenged charged negligence in general terms and neither it nor the bill of particulars filed therewith set forth any specific allegations of acts of negligence. Under our rules of practice the *res ipsa* doctrine is not a rule of pleading but relates to the burden of proof and sufficiency of the evidence. *Bohlen v. Glenn L. Martin Co.,* 193 Md. 454, 461, 67 A. 2d 251; *Potts v. Armour & Co.,* 183 Md. 483, 486, 39 A. 2d 552. See also Kaiser, *Pleading Negligence in Maryland,* 11 Md. L. Rev., 102, 117, *et seq.*

There is little question that the doctrine may be made applicable where an accident has occurred as the result of the negligent operation of a vehicle. *Shirks Motor Express v. Oxenham,* 204 Md. 626, 632, 106 A. 2d 46; *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 262, 96 A. 2d 241; *American Exp. Co. v. Terry,* 126 Md. 254, 261, 94 Atl. 1026. In *Hickory Transfer Co., supra,* although the doctrine was found inapplicable, Chief Judge Sobeloff stated at page 262,

"When a vehicle leaves a highway and crashes into a building, or a pedestrian on a sidewalk, the injured party may show the happening of the event and rest. In lieu of direct proof of negligence he may rely on the inference of negligence to be deduced from all the circumstances. In such a case it is said 'the thing speaks for itself', or *res ipsa loquitur.*"

The same rule obtains in other jurisdictions. In a very thorough and exhaustive annotation in 79 A.L.R. 2d 6, "Applicability of res ipsa loquitur doctrine where motor vehicle leaves road," the annotator preliminarily summarizes at page 18:

"Among the various types of automobile accidents there is at least one in which the res ipsa loquitur doctrine has been applied with appreciable consistency. Where a motor vehicle leaves the roadway without a prior collision and thereby causes injury or damage, the courts, as a general rule, are prepared to draw an inference of negligence from the occurrence, assuming, of course, that all the other conditions of applicability are met. Even those cases in which the doctrine was held inapplicable in the particular circumstances support the general proposition that the doctrine is available in this particular type of automobile accident by basing the result reached on one of the commonly accepted grounds of inapplicability, thus permitting the conclusion that if the stated grounds of inapplicability were eliminated the doctrine would have been applied."

The doctrine has been held in a number of cases to be applicable to an occupant of the car. For a synopsis of the cases see 79 A.L.R. 2d, Section 28 [a], pp. 80-103.

The last sentence just quoted is evidence that courts are reluctant to suggest that simply because a car runs off the road the doctrine automatically may be invoked.[2] In fact, as this Court stated in the case of *Christ v. Wempe,* 219 Md. 627, 635, most courts hold that the fact a vehicle skids or slides on a *slippery* highway does not in itself constitute evidence of negligence, and *res ipsa loquitur* has no application. The opinion cited in support of this not only A.L.R. annotations and leading treatise writers, but prior decisions of our own, and applied the rule there. Again this Term we have applied the rule, *Glass v. Bair,* 233 Md. 194, 195 A. 2d 680, where an automobile skidded on a sharp S-curve on a dark and rainy night and there was no evidence of excessive speed or other act of negligence which could have caused the accident. We think the case

---

2. The trial court instructed the jury substantially in compliance with this when it stated, "Now the defendant has also requested the Court to instruct you that the mere happening of an accident does not impute negligence on the part of the defendant." Accord: Frenkil v. Johnson, 175 Md. 592, 604, 3 A. 2d 479.

before us is easily distinguishable from these cases and is a proper one for the application of the doctrine of *res ipsa loquitur*.

In this case the road was dry and straight with only a slight upgrade at the point where the car left the pavement. The car was operated by appellant, and there was no claim he was not in exclusive control. No act of God or *vis major* was alleged to have been the cause of the accident inflicting the fatal injuries, which would have made the doctrine inapplicable. *Shirks Motor Express v. Oxenham, supra; Frenkil v. Johnson,* 175 Md. 592, 3 A. 2d 479. It is true the instructions to the jury were not couched in explicit terms of *res ipsa loquitur*. Nowhere in the record before us can be found an utterance by the appellees of that elusive phrase. Indeed, even in their brief in this Court in answer to appellant's contention the doctrine was inapplicable they merely state it is a "part of the basic question to be decided" and is not a separate issue. However, we think that a careful reading of the instructions demonstrates that the doctrine was inferentially presented. In the very limited portion of the instructions concerning the theory of the plaintiffs' case the court stated, "Now the alleged or claimed acts of negligence on the part of the defendant as raised by the plaintiff is (sic) that he was driving his car up the road *and for no reason went off the road,* struck a culvert, after skidding 23 feet, then his car ended up in a field." (Emphasis added.) The trial judge then went on to summarize the defendant's evidence to rebut the inference of negligence and the plaintiffs' evidence contesting the defendant's version. We might add here that there were no exceptions to the charge.

Aside from reliance on *Christ v. Wempe, supra,* which we find distinguishable, the main thrust of appellant's argument seems to be, in the phrase of Chief Judge Soboloff in the *Hickory Transfer Co.* case, *supra,* at page 263, that the appellees "proved too much and too little." The appellant here did not argue that any of the classic elements of the doctrine had not been established. We do not agree that too much was proved, and we think enough was proved to permit an inference of negligence. Appellees, through the investigating officer, did show there were skid marks and there were marks in the field showing the car

had flipped over. To this testimony the appellant ascribes an attempt to prove excessive speed and thus a specific act of negligence. That may well be one entirely logical and certainly permissive inference to draw, but it is not by any means a compelling one. In any case, as appellant himself points out in his brief, negligence cannot be proven from testimony concerning what occurred after the accident. *Hickory Transfer Co. v. Nezbed, supra; Brooks v. Childress,* 198 Md. 1, 81 A. 2d 47. We think it was entirely appropriate to examine the officer concerning the path the car took and where it came to rest as a part of proving that the car left the highway without a prior collision and as a result Lamm was fatally injured.

The sole witness for the defense was the appellant whose exculpatory testimony was that a truck was approaching in the opposite direction and a car was attempting to pass it, thus forcing him off the road. The evidence produced by the appellees, through the witness Toms, was that he saw but one set of lights. Although this evidence came in on redirect examination as a part of the case for the appellees and was in that sense anticipatory of the defense to be raised, it was nevertheless a part of the testimony to be considered by the jury. They apparently believed the emergency testified to by the appellant did not exist. Toms' testimony was not intended to, nor did it, amount to an attempt to show a specific act of negligence. *Cf. Hickory Transfer Co. v. Nezbed, supra,* where the testimony of plaintiff's own witness worked to exculpate the defendant, and thus the doctrine of *res ipsa loquitur* was avoided because the inference of negligence could not then be drawn.

Here the inference of negligence permissibly to be drawn from the facts of the accident was sought to be dispelled by the appellant's explanation, and the validity of that effort was in turn challenged by the testimony of Toms. Reasonable minds could draw different inferences from all the testimony presented. *Potts v. Armour & Co., supra.* "Whether the operator of an automobile was confronted with an emergency, and whether he acted negligently under the circumstances, are generally questions for the jury." *Warnke v. Essex,* 217 Md. 183, 187, 141 A. 2d 728. We think the appellees made out a prima facie case of negligence based on the doctrine of *res ipsa loquitur,*

36

and the question whether the appellant had met the burden of rebutting the inference he had failed to use due care was properly left to the jury.

*Judgments affirmed, with costs.*