BRICKER *v.* GRACEFFO, ET AL.

[No. 81, September Term, 1964.]

*Decided November 17, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*George L. Huber, Jr.* and *Eugene A. Edgett, Jr.* for the appellant.

*Bayard Z. Hochberg,* with whom were *Paul Berman* and *Harold A. Manheim,* on the brief, for appellee Eugene E. Graceffo; and *William E. Brannon* for appellee Gage E. Murray.

HORNEY, J., delivered the opinion of the Court.

Injured as the result of a collision between two motor vehicles, in one of which he was riding, a passenger, Eugene E. Graceffo, brought suit against both operators, Jerome A. Bricker and Gage E. Murray, for damages and recovered a judgment therefor. On appeal, Bricker, one of the defendants, is the appellant, and Graceffo, the plaintiff, and Murray, the other defendant, are the appellees. Murray did not appeal. The questions presented on appeal relate to alleged errors in not granting motions for a directed verdict and mistrials as well as in the instructions as to contributory negligence on the part of the injured guest passenger.

The collision occurred in the early morning (between 12:30 and 1:00 o'clock) of October 24, 1960, about seven-tenths of a mile south of Elkton, while Bricker was attempting to pass to the left of Murray. At the time of the accident, Graceffo was asleep or dozing on the left side of the back seat and did not see the preceding movements of the vehicles. Both vehicles were traveling in a westerly direction on the northerly side of U.S. Route 40, a dual highway with a median strip in between

the northerly and southerly traffic lanes. The collision happened in the area of a crossover through the median strip, but the investigating trooper could not determine the actual point of impact. However, skidmarks left by the Bricker vehicle show that its left side was close to the crossover when the accident occurred. At this point the traffic lanes on both sides of the highway were straight and level, and the weather was clear and dry. There was no other traffic on the northerly side of the highway just prior to the collision.

Bricker together with Graceffo and other service men as passengers were en route from New York to Fort Meade. Bricker was driving. He was in no hurry, was not tired, had not been drinking, and looked "perfectly all right" to Graceffo when they left New York. Bricker drove carefully at an average speed below the limit, and there was never any reason for the passengers to complain about his driving. Shortly before the accident happened, they had stopped at a diner for food and drink and to use the toilet facilities, but no one had any intoxicating beverages.

Murray had come from his father's house at Cherry Hill and (being low on gasoline) was heading for the crossover and a filling station he knew was on the southerly side of the dual highway. Although he had come out of a side road onto the dual highway ahead of the oncoming Bricker vehicle, he estimated that he had been on the northerly side of the highway for about eight minutes before the collision occurred.

According to Bricker, he was traveling at a speed of between 45 and 50 miles per hour in the right or outer traffic lane until he reached a point approximately one mile from the crossover when he saw the Murray vehicle and, at a distance of about 300 to 350 yards to the rear of it, pulled over to the left or inner lane and traveled in that lane for one or two miles. As he started to pass and his vehicle had reached the midpoint of the vehicle he was passing, Murray turned left. In trying to avoid a collision, Bricker first stated that he had swerved to the left and applied his brakes, but later admitted that he never actually turned his wheel. Although he had observed the tail lights of the vehicle ahead, he did not see the left turn signal but would not say that the signal was not given. Prior to and

at the time of impact, the Bricker vehicle was centered in the left traffic lane. He did not blow his horn because he never did when passing another vehicle.

According to Murray, he was also traveling at 45 miles per hour in the right or outer lane for about 300 yards or until he was about 300 yards from the crossover. Before he started over into the left or inner lane, he turned on the signaling device. At the same time he looked for traffic and saw an automobile about 200 yards or more behind him in the right or outer lane. He then changed lanes and when about 150 yards from the crossover he "slowed down real slow" to about 6 or 7 miles per hour since he was "then about ready to go into his turn." When he had thus slowed and was ready to turn left into the crossover, he noticed the Bricker vehicle to his left and cut his wheel to the right in an effort to get out of his way, but the two automobiles collided by scraping or squeezing together.

The photographs taken after the accident indicate that the contact between the two vehicles was between the left front bumper of the Murray vehicle and the right front fender-well of the Bricker vehicle, but there was also damage to the right front bumper of the Bricker automobile.

(i)

The motion Bricker made for a directed verdict at the close of the case was based on the premise that the whole question of his negligence was dependent on the testimony of Murray. Relying on the line of cases—such as *Oberfeld v. Eilers,* 171 Md. 332, 189 Atl. 203 (1937), and *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 59 A. 2d 313 (1948)—holding that a question of negligence should not be submitted to a jury where the testimony is too inconclusive, contradictory and uncertain to be the basis of a legal conclusion, Bricker contends that the jury should not have been allowed to consider whether he was also liable for the injuries Graceffo sustained as a result of the accident. We do not agree.

The alleged contradictions or inconsistencies in the testimony of Murray, which Bricker claims entitled him to a directed verdict in his favor, were, for the most part, no more than the telling of a particular fact differently on one occasion from the

stating of the same fact at another time. In every instance where there seemed to be discrepancies in the testimony concerning a particular fact, the witness satisfactorily explained the supposed contradictory or inconsistent statements. The claim that Murray gave conflicting testimony as to the position of his vehicle at the time the left-turn signal was given was fully explained on recross-examination when the witness reiterated that he gave the signal 300 yards *before* reaching the crossover and *just as* he was about to proceed into the left lane. The claim that the testimony was inconsistent as to the place where the vehicle changed lanes was explained by the subsequent unequivocal statement to the effect that when he told the trooper he was in the *right* lane at the time of the collision he meant the *correct* lane from which a left turn should be made. The claim that Murray contradicted himself as to the position of the vehicle after the change of lanes—when he allegedly told an investigator he was straddling the lanes after the change and later testified that his right wheels were closer to the center line—was subsequently explained when the witness further testified that he was referring to his position *after* the accident and not to his position after making the lane change *before* the collision. The final claim that the testimony was inconsistent as to the speed of the vehicle—45 m.p.h. or 6 to 7 m.p.h.—as it approached the crossover was sufficiently explained by the testimony of the witness that he had been traveling at a speed of 45 miles per hour until he was about 150 yards from the crossover when he reduced his speed to 6 or 7 miles per hour in order to make the turn.

Since there was evidence that the left-turn signal was given while Murray was traveling in the right or outer lane; that he changed lanes with the signal still operating; that the signal continued to operate as he approached the crossover in the left or inner lane at a reduced speed; that Bricker had ample time to observe the movement and speed of the vehicle ahead of him; that he had seen the tail lights but failed to observe the left-turn signal; that he gave no warning of his intention to pass to the left; and that instead of reducing his speed, he kept a straight course in the center of the left lane without turning either onto the median strip or back into the right lane

in an effort to avoid the collision, we think the lower court properly refused to grant the motion for a directed verdict. The cases hold that the granting of a motion for a directed verdict on the issue of negligence is never justified unless there is a total failure of legally sufficient evidence to prove it. *Darienzo Trucking Corp. v. Sullivan,* 202 Md. 32, 95 A. 2d 293 (1953) ; *Powers v. State use of Reynolds,* 178 Md. 23, 11 A. 2d 909 (1940). See also *Crunkilton v. Hook,* 185 Md. 1, 5, 42 A. 2d 517 (1945). Cf. *Bernardi v. Roedel,* 225 Md. 17, 168 A. 2d 886 (1961). Clearly, this was not the case here.

We think the evidence as a whole was such that the jury could reasonably have found either Murray or Bricker or both to have been negligent. Regardless of when or where the left-turn signal was given, there was uncontradicted evidence from which the jury could have properly concluded that it was put on at least 300 yards from the crossover and had stayed on until the happening of the accident. Under these circumstances, since Bricker could not say, though he had not seen it, that the signal had not been on, the jury could have also concluded, quite properly, that the failure of Bricker to observe whether or not the signal was operating was negligence on his part in that he failed to exercise reasonable care. Cf. *Palmer Ford, Inc. v. Rom,* 216 Md. 165, 139 A. 2d 697 (1958), where a conflict in testimony as to whether a signal was given was held to present a question for the jury to resolve. It was also held in the *Rom* case that if a signal was made within the distance required by statute, the failure of the overtaking operator to see and regard it would be clear evidence of negligence.

(ii)

The refusal of the trial court to grant the motions for mistrial, even if reviewable inasmuch as the court made no ruling on them, was not prejudicial under the circumstances of this case, particularly in view of the fact that Bricker declined to have the court caution the jury.

During the course of the cross-examination (on behalf of Murray) of the investigator for Bricker, who had taken the statement referred to in part (i) from Murray, the questions asked, to which timely objections were made and sustained,

were aimed at ascertaining for whom the investigator worked and whether he had talked to a "Mr. Sanders" seated in the court room before he took the stand. No answers were made to either question nor was any proffer made as to what the answers might have disclosed. And no mention of insurance was made at any time. On the record, there is nothing for us to decide. In any event, where the possibility of prejudice is slight, as it seems to have been here, a mere inference that there may be insurance would not necessarily require a termination of the trial. *Cluster v. Upton,* 165 Md. 566, 168 Atl. 882 (1933).

### (iii)

Nor was there error in the refusal of the trial court to instruct the jury with respect to contributory negligence on the part of the plaintiff. Even if the circumstances of this case were such as to support an inference that the dozing Graceffo had completely entrusted his safety to Bricker and assuming, without deciding, this would justify the instruction, the answer "no" to an interrogatory as to whether the plaintiff was contributorily negligent, absent a subsequent timely amendment of the answer, had the effect of barring the issue of contributory negligence. Cf. *Hillshire Corp. v. Pachuta,* 235 Md. 178, 201 A. 2d 1 (1964). See also *Richardson v. Home Mutual Life Ins. Co.,* 235 Md. 252, 201 A. 2d 340 (1964), where it was held that one who fails to make timely objections to amended issues waives his right to later challenge them.

> *Judgment affirmed; appellant to pay the costs.*