984 A.2d 346

**Dora ROMERO, et al.**

v.

**Claudia BRENES, personal representative
of the Estate of Carlos Brenes.**

**No. 1504 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

Nov. 30, 2009.

WIlliam R. Scanlin, Bethesda, MD, for Appellant.

Neil Dachis, Greenbelt, MD, for Appellee.

Panel: HOLLANDER, JAMES R. EYLER, and LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

LAWRENCE F. RODOWSKY, Judge (Retired, Specially Assigned).

This appeal arises out of a collision between an automobile and a pole in a median strip that killed both the driver, Carlos

Brenes (Carlos), and his front-seat passenger, Nelly Mursal (Nelly). Dora Romero and Abdinur Mohamed Mursal, the parents of Nelly Mursal and the personal representatives of her estate, appellants, filed a wrongful death action, *see* Maryland Code (2006 Repl. Vol.), § 3–904(a) of the Courts & Judicial Proceedings Article, and a survival action, *see* Maryland Code (2001 Repl. Vol.), § 7–401 of the Estates & Trusts Article, in the Circuit Court for Montgomery County. Appellants sued Claudia Brenes (Claudia), personal representative of the estate of Carlos Brenes, appellee. At trial, appellee moved for judgment at the close of appellants' evidence pursuant to Maryland Rule 2–519, arguing that the evidence was insufficient to establish that the negligence of Carlos was a proximate cause of the fatal crash. The court granted the motion and entered judgment, which prompted this appeal.

Appellants present three questions for our consideration.[1]

"1. Does the trial court's failure to weigh the evidence in favor of the nonmovant constitute error?

"2. Does the trial court's failure to infer negligence constitute error?

"3. Does the trial court's personal evaluation of the evidence invade the province of the jury and therefore constitute error?"

As explained below, the evidence was legally sufficient. Thus, we shall reverse.

### Factual and Procedural Background

At trial, appellants called three witnesses. The first was Zulma Mursal (Zulma), Nelly's sister. Zulma had no personal knowledge relating to the accident, and her testimony is not relevant to the issue before us.

Appellants also called Gabriel Mercedes (Mercedes), Nelly's boyfriend, who testified to the following. In the early morn-

---

1. These questions are simply different aspects of the core issue, i.e., whether there was sufficient evidence to submit the plaintiffs' case to the jury.

ing of October 2, 2004, Carlos drove Nelly and Elizabeth Balkazar (Balkazar) from a birthday party to the Coco Cabana Club at Riggs Road and University Boulevard where Mercedes worked as a security guard. Carlos was operating a "small, small sports car," grey in color . . . that appeared to be a Celica. The purpose of the stop was for Nelly to obtain an apartment key from Mercedes. When they arrived, Mercedes came out of the club and gave Nelly the key. Mercedes leaned into the car on the passenger side and briefly spoke to Carlos. Mercedes did not detect any signs that Carlos was in any way impaired. Similarly, he did not notice anything inappropriate in Carlos's operation of his vehicle. When the vehicle left the club parking lot, Nelly was in the front passenger seat, and Balkazar was in the back seat.

After the vehicle left the club parking lot, Mercedes and Nelly were "texting" each other. At some point, Mercedes called Nelly on the phone, and while they were talking, the conversation was "cut off." Later, after leaving the club and as he was driving to his destination, he saw the aftermath of the accident. Police were at the scene, and he was not permitted to get close.

Authur[2] Gatewood (Gatewood), a night auditor for Holiday Inn Express who had twenty-three years experience in driving automobiles, was called by the appellant. He testified to the following. At approximately 2:00 a.m. on October 2, he was at a 7–Eleven store on the north side of University Boulevard at its intersection with Piney Branch Road. While his vehicle was standing at the edge of the 7–Eleven parking lot, in anticipation of entering University Boulevard, by turning right in order to proceed westbound on that thoroughfare, he first noticed the vehicle in question. The witness described University Boulevard as containing three traffic lanes in each direction, separated by a median. It was dark that morning, it was not raining, and there were only a few cars on the road. When Gatewood surveyed the three oncoming lanes of west-

---

**2.** The spelling is that in the transcript.

bound traffic, he observed two vehicles traveling abreast of one another approximately 500–600 feet away. The silver Toyota Celica driven by Carlos was traveling in the farthest right lane closest to Gatewood, while the other vehicle was in the farthest left lane. The middle lane was empty.

Gatewood waited until both vehicles passed him because they appeared to be exceeding the speed limit and he did not want to impede them by entering the roadway. The speed limit on University Boulevard was 40 m.p.h. at that point. When appellants' counsel asked Gatewood to approximate the speed of the two cars as they were passing him, he responded: "I'd say quick. I mean I'm not—I couldn't say I'm an expert, but I would say they were going a good 50 or 60. I'd say a little over the speed limit. It wasn't heinous, but it was moving quickly. Clearly speeding."

After both vehicles passed him, Gatewood turned onto University Boulevard behind them. He "could still see them in the next block as [he] pulled out and accelerated to speed." As Gatewood approached the red light at the next intersection, he observed, "about a block" ahead of him,

> "what looked like a car making a hard left hand turn. It was headlights. So it struck me that that person was making a hard left for whatever reason, but I couldn't see clearly. But I could see the lights going from the right to the left as though someone were making a left turn."

From this witness's vantage point, and from the light that he saw, the Celica "moved from the right lane to the left lane, or I guess spun out."

When Gatewood continued driving to where the headlights had swerved in the roadway, he saw that "the vehicle had hit the curb on the right and come across and hit a pole that sits in the median on the left." He identified it as Carlos's Celica, which he described as "[t]wisted. The passenger side was completely obliterated. The windshield, I believe, was off. The roof of the car, the canopy, was mangled. Totaled. It was devastating."

The witness pulled over to the right-hand curb and called 9–1–1. He observed parts of the Celica "on the curb and in the street" where he had parked. "There was a headlight sitting next to [him]." It appeared to him that "the impact" had sent pieces "down the street."

Gatewood did not see the Celica strike either the lamp post, the right curb, or any other vehicle. He saw no pedestrians or animals in the vicinity. There were no other vehicles between Gatewood's car and the two cars that he had described. The roadway was straight. There was no "natural driveway" where he had observed the hard left.

The back seat passenger, Balkazar, survived the accident with serious injuries, but Carlos and Nelly died.

Balkazar did not testify in the plaintiffs' case in chief. The plaintiffs did not call any investigating police officer, any accident reconstructionist, and did not introduce photographs of the Celica.

When moving for judgment at the end of the plaintiffs' case, the appellee argued, in essence, that evidence that the driver was exceeding the speed limit merely proved negligence in the abstract, but that there was no direct evidence, and no permissible inference, that exceeding the speed limit had proximately caused the accident. Appellants argued that

> "it is a fair inference that it was the excessive speed and the failure to maintain proper control of the car that caused the collision which took the life of the plaintiff. We think that the prima facie case has been established."

The court sent the jury to lunch in order fully to hear counsel on the motion. The court then said to appellants' counsel, "You're not arguing res ipsa, are you?" Counsel replied: "I'm not, Your Honor."

The plaintiffs, however, continued to argue that "a person has to control speed and maintain control of the vehicle so as to avoid an accident," and that the plaintiffs did not have any duty "to exclude every non-negligent possibility of the case." In opposition to the motion, appellants submitted that the

evidence showed "a vehicle that was going too fast and a short distance down the road, that same vehicle ... went out of control ... struck the curb on the right ... and then crossed in a path over where it hit a pole at a high rate of speed." The court pointed out that the jury did not know "whether there was brake failure ... or a tire blew...."

After reviewing a number of Maryland cases in which there was evidence that the defendant motorist exceeded the speed limit, the court ruled that there was not "legally sufficient evidence connecting whatever the rate of speed may have been ... with the result."

From the granting of the motion, this appeal has been taken. The parties' briefs in this Court reiterate their arguments to the trial court.

### Standard of Review

In reviewing the grant of a motion for judgment, we apply the same analysis as the trial court; we consider all the evidence, including inferences reasonably and logically drawn therefrom, in a light most favorable to the non-moving party. *University of Baltimore v. Iz,* 123 Md.App. 135, 149, 716 A.2d 1107, 1114, *cert. denied,* 351 Md. 663, 719 A.2d 1262 (1998) (quotations and citations omitted). Phrased another way, the standard is that "the granting of a motion for a directed verdict on the issue of negligence is never justified unless there is a total failure of legally sufficient evidence to prove it." *Bricker v. Graceffo,* 236 Md. 558, 563, 204 A.2d 512, 515 (1964).

### Discussion

This is not a case in which the inquiry as to the sufficiency of the evidence of negligence is appropriately focused exclusively on whether speed was the proximate cause of the accident. The relevant cases are those in which a motorist has failed to maintain control of a vehicle, as evidenced by its leaving the travel portion of a roadway and striking some person or object. In these cases, the failure to maintain

control of the vehicle presents a prima facie case of negligence, which the jury may or may not accept. In these cases, absent producing explanatory, exculpatory evidence, the defendant runs the risk of non-persuasion. If exculpatory evidence is introduced and is controverted, a jury question on that issue is presented. These Maryland cases loosely fall into three classes. First, some cases articulate the analysis in terms of inferences that may be drawn from the direct evidence. Second, other cases employ the label, *res ipsa loquitur*. Third, in still other cases, the Court blends the two analyses or expressly states they are interchangeable.

Illustrative of the first type of analysis is *Bavis v. Fonte*, 241 Md. 123, 215 A.2d 739 (1966), where a guest passenger in a motor vehicle sued the host driver. The plaintiff proved the following facts:

"Suddenly, while driving along a 40–foot wide one-way, well-lighted street in Baltimore City on a wet, cloudy morning, the driver-defendant, at about 2:10 a.m. on April 8, 1962, failed to negotiate a slight curve, struck the right curb, went over the curb (nearly seven inches high) and a sidewalk of some thirteen feet in width, and crashed into an electric light pole located about 62 feet from where the vehicle had struck the curb. Plaintiff and the operator were the only occupants of the car at the time of the accident, which resulted in personal injuries to the plaintiff."

*Id.* at 125, 215 A.2d at 740.

The trial court granted a motion for a directed verdict at the end of the plaintiff's case because there was not " 'even the slightest scintilla of evidence of negligence.' " *Id.* The Court of Appeals reversed in an opinion requiring less than two pages. After noting that the plaintiff disavowed any reliance on *res ipsa loquitur*, the Court held:

"Here, there was direct (as contradistinguished from inferential) testimony to the effect that defendant was driving his vehicle at a reasonable rate of speed upon a wide, well-illuminated, one-way street, and that he failed to negotiate an easy curve, struck and jumped a curb and his vehicle

only came to rest after striking a pole. This evidence, we think, was sufficient to support a finding (if the jury decided to make such a finding) that the accident was caused by Fonte's failure to keep a proper lookout or to have had his car under reasonable and proper control; hence, the case should not have been taken from the jury."

*Id.* at 125–26, 215 A.2d at 740.

*Short v. Wells,* 249 Md. 491, 240 A.2d 224 (1968), is another one-car accident case in which the vehicle left the road. It was not tried or decided as a *res ipsa case. See Henderson v. Maryland Nat'l Bank,* 278 Md. 514, 521, 366 A.2d 1, 5 (1976). The driver and one passenger were killed and two passengers survived the accident, which occurred on State Route 353, two miles north of Pittsville in Wicomico County. The road was wet and the subject vehicle's tires had " 'little tread.' " "While taking a curve on the east side of the roadway, the automobile went out of control, ran off the west side of the road, skidded sideways for a distance of 286 feet, struck a utility pole and overturned[.]" *Short,* 249 Md. at 492–93, 240 A.2d at 225. One of the survivors testified, via deposition, that the driver had reduced his speed to "70 m.p.h., just prior to the accident[.]" *Id.* at 494, 240 A.2d at 226. Although there was also medical evidence that the driver was intoxicated, the Court stated that the evidence of speed "was sufficient to take the case to the jury[.]" *Id.* at 497, 240 A.2d at 228.

See also *Powers v. State u/o Reynolds,* 178 Md. 23, 28, 11 A.2d 909, 911 (1940) ("The testimony as to the speed [70 m.p.h. on a mountain road], the impact against the guardrail, and other facts, justified the trial court in submitting the case to the jury.").

*Stitzel v. Kurz,* 18 Md.App. 525, 308 A.2d 430, *cert. denied,* 269 Md. 761 (1973), was a wrongful death action on behalf of a passenger in an automobile against the driver. The driver was proceeding at night in an easterly direction on Joppa Road in Baltimore County. At a point where the road turned to the left, the vehicle went off the road to the right and struck a utility pole. A witness from the traffic engineering

department for Baltimore County confirmed that a directional sign at the site erroneously indicated that the curve was to the right. There was no evidence of negligence, other than the driver's having gone off the roadway. Following a mistrial, the circuit court granted judgment n.o.v. in favor of the defendant, and this Court reversed. We reasoned:

"The jury would have been free to reject the inference that Kurz [the driver] saw or was misled by the sign at all, and to conclude that the accident was caused solely by his negligence. Likewise it would have been free to find that even though Kurz was misled by the incorrect sign he was himself guilty of negligence which was a concurring proximate cause of the accident. Or, the jury could have found that Kurz was free of negligence, and the incorrect sign was the sole proximate cause."

*Id.* at 534, 308 A.2d at 435.

The opinion in *Stitzel* relied in part on *Hanes v. State u/o Lamm,* 236 Md. 28, 202 A.2d 364 (1964), in which the Court's discussion blends inferences from the evidence with *res ipsa loquitur.* The case involved a one-vehicle, nighttime accident in which the lone passenger was killed and the driver survived. The accident occurred two miles north of Point of Rocks in Frederick County on a paved concrete road twenty-two feet wide. The weather was clear and dry. The subject vehicle ran off the road, down an embankment and turned over. There were twenty-three feet of skid marks on the road. After judgment for the plaintiff, the driver appealed from the denial of his motion for directed verdict.

Neither at trial, nor on appeal, was *res ipsa loquitur* the liability theory of the plaintiffs in *Hanes.* This is clear from the record, as described by the Court of Appeals.

"It is true the instructions to the jury were not couched in explicit terms of *res ipsa loquitur.* Nowhere in the record before us can be found an utterance by the appellees of that elusive phrase. Indeed, even in their brief in this Court in answer to appellant's contention the doctrine was inapplicable they merely state it is a 'part of the basic question to be

decided' and is not a separate issue. However, we think that a careful reading of the instructions demonstrates that the doctrine was inferentially presented. In the very limited portion of the instructions concerning the theory of the plaintiffs' case the court stated, 'Now the alleged or claimed acts of negligence on the part of the defendant as raised by the plaintiff is (sic) that he was driving his car up the road *and for no reason went off the road,* struck a culvert, after skidding 23 feet, then his car ended up in a field.' (Emphasis added.) The trial judge then went on to summarize the defendant's evidence to rebut the inference of negligence and the plaintiffs' evidence contesting the defendant's version."

*Id.* at 34, 202 A.2d at 366–67.

The *Hanes* Court quoted from Annot., " 'Applicability of res ipsa loquitur doctrine where motor vehicle leaves road,' " 79 A.L.R.2d 6, 18 (1961), the following summary:

" 'Among the various types of automobile accidents there is at least one in which the res ipsa loquitur doctrine has been applied with appreciable consistency. Where a motor vehicle leaves the roadway without a prior collision and thereby causes injury or damage, the courts, as a general rule, are prepared to draw an inference of negligence from the occurrence, assuming, of course, that all the other conditions of applicability are met. Even those cases in which the doctrine was held inapplicable in the particular circumstances support the general proposition that the doctrine is available in this particular type of automobile accident by basing the result reached on one of the commonly accepted grounds of inapplicability, thus permitting the conclusion that if the stated grounds of inapplicability were eliminated the doctrine would have been applied.' "

*Hanes,* 236 Md. at 33, 202 A.2d at 366.

Thus, the Court was able to say, "[W]e think enough was proved to permit an inference of negligence," *id.* at 34, 202 A.2d at 367, as well as to say, "We think the appellees made

out a prima facie case of negligence based on the doctrine of *res ipsa loquitur[.]" Id.* at 35, 202 A.2d at 367.

*Fields v. Morgan,* 39 Md.App. 82, 382 A.2d 1099 (1978), arose out of the second of two one-car accidents. The driver, whose blood alcohol level was 0.16%, had struck and killed a pedestrian when his vehicle strayed across the center line. His passenger, the plaintiff, testified that he struck his head in that accident and had no recollection of subsequent events. The driver continued on after the pedestrian accident and, while being pursued by a witness to that accident, ran off the road and struck a tree. The passenger relied on *res ipsa* but also introduced in his case in chief the statement given by the driver to the police, in which the driver said that the plaintiff was fighting him for the steering wheel when the vehicle went out of control. This evidence, the defendant argued, demolished the *res ipsa* theory, and the trial court agreed, granting a directed verdict for the driver. This Court reversed, because the evidence that the plaintiff was unconscious contradicted the defendant's exculpatory evidence of a fight.

*Fields* stands for the proposition that a jury may find negligence of a driver, proximately causing injury, when the vehicle is driven off the road, if the jury does not believe the driver's non-negligent explanation of the accident. Fields is also significant to the case before us because it also relied on *Bavis,* 241 Md. 123, 215 A.2d 739, reviewed above. This Court explained:

> "Although the plaintiff disavowed any reliance on *res ipsa loquitur* in *Bavis* the case is still controlling. The plaintiff's case was based on circumstantial evidence and *res ipsa loquitur* is nothing more than a label that is attached to certain situations where the mere occurrence of an accident furnishes enough circumstantial evidence to allow a jury to draw an inference of negligence. *See Short v. Wells,* [249 Md. 491, 240 A.2d 224 (1968).]"

*Fields,* 39 Md.App. at 87 n. 5, 382 A.2d at 1102 n. 5.

To the same effect is *Unsatisfied Claim & Judgment Fund Bd. v. Bowles,* 25 Md.App. 558, 334 A.2d 532 (1975). There,

the plaintiff was walking at 6:30 p.m. in February on the gravel shoulder of a highway, facing oncoming traffic, when he was hit by an unidentified motorist and rendered unconscious. This Court held that the trial court properly denied the Fund's motion for a directed verdict. Rejecting the argument that there was no proof of proximate cause, we applied the rule stated in *Otis Elevator v. LePore*, 229 Md. 52, 181 A.2d 659 (1962), namely:

> " ' "Plaintiff is not, however, required to ... negative entirely the possibility that the defendant's conduct was not a cause, and it is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise." ' "

*Bowles*, 25 Md.App. at 562, 334 A.2d at 535 (quoting Prosser, Torts § 44 (2nd ed. 1955)). Answering the Fund's contention "that the mere happening of an accident standing alone does not give rise to a presumption of negligence," we said that that

> "rule is not applicable, however, where, the doctrine of *res ipsa loquitur* applies.[2]

---

"[2] The parties did not raise the issue of the applicability of *res ipsa loquitur* below or in this appeal. We will consider the issue because under Maryland rules of practice the *res ipsa* doctrine is not a rule of pleading but relates to the burden of proof and sufficiency of evidence. *Hanes v. State, Use of Lamm*, 236 Md. 28, 32, 202 A.2d 364[, 365] (1964)."

*Bowles*, 25 Md.App. at 563, 334 A.2d at 536.

*Sun Cab Co. v. Walston*, 15 Md.App. 113, 289 A.2d 804 (1972), *aff'd in part and rev'd on other grounds*, 267 Md. 559, 298 A.2d 391 (1973), touches both bases. In that case, the passenger in a taxicab was killed when the cab, proceeding eastbound on Edmondson Avenue in Baltimore City, crossed the center line and collided head-on with a westbound truck. The streets were wet, and there was conflicting evidence as to whether the tires on the taxicab were bald. An eyewitness

testified that the cab was going between thirty and forty miles an hour. One argument advanced on appeal was error in denying the taxicab company's motion for a directed verdict. This Court held, in part:

> "Evidence of the speed of the taxicab just before the accident justified a rational inference by the jury that [the driver] was driving at a speed either in excess of the legal maximum, or greater than was reasonable under the circumstances."

*Id.* at 146, 289 A.2d at 822. This analysis indicated an inference of negligence properly could be drawn from the direct evidence. We also said that the driver "was unable to say why his taxicab went out of control," thus indicating reliance on a *res ipsa loquitur* theory. *Id.* at 148, 289 A.2d at 823.

Even more explicit is *Hickory Transfer Co. v. Nezbed*, 202 Md. 253, 96 A.2d 241 (1953), where the Court said:

> "When a vehicle leaves a highway and crashes into a building, or a pedestrian on a sidewalk, the injured party may show the happening of the event and rest. In lieu of direct proof of negligence[,] he may rely on the inference of negligence to be deduced from all of the circumstances. In such a case it is said 'the thing speaks for itself', or *res ipsa loquitur*. The burden of proof does not shift; but the defendant then has the obligation to go forward with his proof, which is sometimes called the risk of non-persuasion."

*Id.* at 262, 96 A.2d at 245.

■ *Hanes, Fields, Bowles*, and *Sun Cab* demonstrate that this Court is not precluded from considering the sufficiency of the evidence in the matter before us under principles relating to res ipsa. This is particularly true where appellants' disavowal of reliance on *res ipsa* was coupled with an argument that negligence could be inferred from the loss of control. Appellants' disavowal may well have been influenced by concern that, having introduced evidence of speed, the inference of negligence arising from the loss of control of the vehicle would not be available, because of Chief Judge Soboloff's

statement in *Hickory Transfer,* 202 Md. at 263, 96 A.2d at 245, that "[p]aradoxically, the plaintiffs proved too much and too little."

In *Hickory Transfer,* the defendant's tractor trailer, traveling at night on a boulevard in Baltimore City, crashed into the plaintiffs' house after it had collided with an automobile that was crossing the boulevard at an intersection that should have been controlled by a traffic light. The plaintiffs proved, without conflict in the evidence, that the traffic light was green for the automobile and that it was not functioning on the face of the signal that should have controlled the tractor trailer's movement.

The "proved too much" statement in *Hickory Transfer* was clarified by the Court of Appeals in *Blankenship v. Wagner,* 261 Md. 37, 273 A.2d 412 (1971). There the Court said that, "[i]f the plaintiff has circumstantial evidence which tends to show the defendant's negligence (and which is therefore *consistent* with the inference relied upon in *res ipsa loquitur)* he should not as a matter of policy be discouraged from coming forth with it." *Id.* at 46, 273 A.2d at 417. Thus, the Court held:

> "While we are of the opinion that the plaintiff might properly have attempted to prove more than he did without weakening his reliance on *res ipsa loquitur,* it was not incumbent upon him to prove absolutely that the defendant was negligent or to counter all other conceivable explanations of the accident during his presentation of the case."

*Id.* at 45, 273 A.2d at 417.

In sum, at the close of the plaintiffs' case in the instant matter, the jury could have found for the plaintiffs on any one or more of three analyses, speed, *res ipsa,* or both. The witness, Gatewood, estimated that Carlos was exceeding the posted speed limit by as much as twenty m.p.h. Based on his description of the "hard left," the jury could have inferred, as did Gatewood, that the Celica had struck the curb on the right side of University Boulevard and crossed two traffic lanes, before colliding with the light pole in the median on the left.

In addition, Gatewood, upon parking on the right side of the road, observed one of the Celica's headlights "sitting next" to him. It appeared to him that the impact had sent pieces of the Celica "down the street." It is unclear, but immaterial here, whether the witness was referring to an impact with the right-hand curb, that dislodged a headlight, or the impact with the light standard in the median, that propelled the headlamp back across at least two lanes of traffic. In either case, that amount of force or momentum, generated by a small sports car, could be found by reasonable persons to indicate excessive speed under the circumstances.

Second, from the off-the-road collision or collisions, the jury could infer that the accident was caused by negligence of some kind on the part of Carlos.

Third, the jury could have found that the accident was caused by speed and by some other negligent act or omission by the person in exclusive control of the Celica, without having that concurring cause, that was *consistent* with excessive speed, specified in the evidence. *See Blankenship*, 261 Md. 37, 273 A.2d 412.

For all of the foregoing reasons, we conclude that the defendant was not entitled to a judgment on motion at the end of the plaintiffs' case.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID BY THE APPELLEE.**

JAMES R. EYLER, J., dissents and files opinion.

Dissenting Opinion by JAMES R. EYLER, Judge.

I respectfully dissent.

At trial, appellants' theory, based on Authur Gatewood's testimony, was that Carlos Brenes was driving at a speed in excess of the speed limit and that negligent act caused him to lose control of his vehicle, strike the right curb, and veer across the highway into the median. Viewing the evidence in

a light most favorable to appellants, it permits a finding that Carlos Brenes (1) exceeded the speed limit on a straight road; (2) struck the right curb;[1] (3) then swerved left, crossing all three lanes of the roadway; and, (4) collided with the light pole in the median. Appellants contend in this Court, as in the trial court, that Gatewood's testimony permits a reasonable inference that Carlos Brenes' violation of the speed limit was a cause-in-fact of the fatal accident. I disagree.

The basic rule is that the burden of proof is on the plaintiff to show that the defendant was guilty of negligence which directly contributed to the accident because the happening of the accident does not of itself constitute negligence. *Brehm v. Lorenz*, 206 Md. 500, 506, 112 A.2d 475 (1955). Appellants did not produce any evidence and have not argued that the speed of Carlos Brenes' vehicle was unreasonable because of specific conditions then in existence. Appellants' argument is based on a violation of a statutory rule of the road. While the violation of a statute may be evidence of negligence, only if the violation causes or contributes to the claimed injury will it constitute actionable negligence for which the defendant may be held liable. *Alston v. Forsythe*, 226 Md. 121, 130, 172 A.2d 474 (1961) (citations omitted). In this vein, the Court of Appeals has repeatedly held that "[e]xceeding the speeding limit does not constitute actionable negligence unless it is a proximate cause of injury or damage." *Myers v. Bright*, 327 Md. 395, 405, 609 A.2d 1182 (1992) (*quoting Alston v. Forsythe*, 226 Md. 121, 130, 172 A.2d 474 (1961); *Spence v. Wiles*, 255 Md. 98, 105, 257 A.2d 164 (1969)).

In *Myers v. Bright*, the Court of Appeals expounded:

---

1. Mr. Gatewood's testimony that Carlos Brenes' car collided with the right curb is questionable. He did not see the actual impacts, if more than one; his testimony does not indicate whether the debris he noticed was by the right curb or whether it was on the left side in proximity to the Celica. Moreover, his conclusory statement that the Celica hit the right curb was an "assumption." Nevertheless, Arthur Gatewood's testimony was introduced without objection and permits a finding that the Celica collided with the right curb before crossing three lanes of traffic and hitting the light pole.

Evidence that a motorist was exceeding a posted speed limit or driving at an excessive rate of speed is not actionable unless such speed is a proximate cause of the accident. To show merely excessive speed is ordinarily not enough to support a verdict based on negligence unless there is some further showing that this excessive speed is a direct and proximate cause of the injury.

327 Md. at 405, 609 A.2d 1182 (quoting Keith C. Miller, Automobile Accident Law and Practice, § 19.10 (1991)(emphasis added)). Thus, even if appellants' proof was sufficient to allow the jury to find that Carlos Brenes was exceeding the speed limit by 10–20 m.p.h. at the time of the accident,[2] the rule in *Myers* dictates that appellants must make some further showing that exceeding the speed limit was a proximate cause of the accident to survive a motion for judgment.

Appellants contend that Mr. Gatewood's testimony shows Carlos Brenes' "obvious loss of control and initial collision with the right-hand side of the road." In support of their position, appellants cite four Maryland cases in which they argue that proof of the causal connection between the driver's speed and the claimed injury was slight, but still legally sufficient to generate a jury question.

In two of the cases cited by appellants, *Sun Cab Co. v. Walston*, 15 Md.App. 113, 289 A.2d 804 (1972), *aff'd*, 267 Md. 559, 298 A.2d 391 (1973), and *Hanes v. State*, 236 Md. 28, 202 A.2d 364 (1964), the plaintiffs relied on the doctrine of *res ipsa loquitur*, which relaxes the normal rules of proof by permitting an inference of both negligence and of proximate causation, to prove actionable negligence legally sufficient to war-

---

**2.** If Mr. Gatewood's testimony were credited by a factfinder, it would support a conclusion that Carlos Brenes was exceeding the speed limit at the time of the accident. Mr. Gatewood testified that, when he entered University Boulevard, he could see the two vehicles in the block ahead of him. When the accident occurred, he had reached the first intersection after entering the highway and was "about a block" behind the Celica and the unidentified vehicle. This testimony indicates a distance traveled of two blocks, with Mr. Gatewood being "about a block" behind the other vehicles when the accident occurred.

rant submission to the jury. *See Peterson v. Underwood,* 258 Md. 9, 19, 264 A.2d 851 (1970). Appellants do not rely on *res ipsa loquitur,* however, but cite the cases in support of their contention that the evidence was sufficient to permit an inference of causal connection between exceeding the speed limit and the accident.

In the case before us, regardless of whether appellants' evidence could have been presented in reliance on *res ipsa loquitur,*[3] it was not. In circuit court, appellants expressly disclaimed reliance on the doctrine and, as just stated, do not argue it in this Court. Under Maryland Rule 8–131(a), "the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court." This Court ordinarily will not consider an issue not raised on appeal. *Heineman v. Bright,* 140 Md.App. 658, 671, 782 A.2d 365 (2001).

Despite the above, this Court has held that a party's failure to expressly invoke the doctrine of *res ipsa* at trial or on appeal would not foreclose us from considering the issue. *Unsatisfied Claim & Judgment Fund Board v. Bowles,* 25 Md.App. 558, 563 n. 2, 334 A.2d 532 (1975) (stating it was appropriate to consider the applicability of *res ipsa* despite the parties' failure to raise it because under the Maryland rules of practice the *res ipsa* doctrine is not a rule of pleading but relates to the burden of proof and sufficiency of evidence.) (citing *Hanes,* 236 Md. at 32, 202 A.2d 364). Here, though, appellants did not simply fail to raise the issue of *res ipsa* below or in this appeal. Rather, they expressly disclaimed reliance on it when the circuit court heard the parties' respective arguments in light of the motion for judgment:

---

**3.** In *Hanes v. State,* the Court of Appeals stated:
> Where a motor vehicle leaves the roadway without a prior collision and thereby causes injury or damage, the courts, as a general rule, are prepared to draw an inference of negligence from the occurrence, assuming, of course, that all the other conditions of applicability are met.

236 Md. at 33, 202 A.2d 364 *(quoting* 79 A.L.R.2d 6).

THE COURT: Let me ask Mr. Scanlin, You're not arguing res ipsa, are you?

APPELLANTS' COUNSEL: I'm not, Your Honor.

More important, however, appellants chose to proceed by attempting to prove a specific act of causal negligence by direct evidence, i.e., exceeding the speed limit, and that the act of exceeding the speed limit was a cause of the collision(s). Normally, a plaintiff must provide evidence of a defendant's specific conduct, which can be by direct or circumstantial evidence, or both. *Res ipsa loquitur* is a rule of circumstantial evidence and an exception to the above requirement. When applicable, it permits an inference of actionable negligence in some unspecified way based on circumstantial evidence of events, even though the plaintiff was unable to prove a specific act. *Dover Elevator v. Swann*, 334 Md. 231, 259, 638 A.2d 762 (1994); Dan B. Dobbs, The Law of Torts, § 154 (West Group 2000). *Res ipsa loquitur* does not apply if a plaintiff presents evidence that, if believed, proves the specific act of negligence. *Vito v. Sargis & Jones, Ltd.*, 108 Md.App. 408, 424, 672 A.2d 129 (1996), *aff'd sub nom Cogan Kibler, Inc. v. Vito*, 346 Md. 200, 695 A.2d 191 (1997). If a plaintiff presents consistent, circumstantial evidence of more than one specific act of negligence, it does not necessarily preclude the application of *res ipsa loquitur*, but it does preclude it if the plaintiff presents all of the evidence relating to the sequence of events. *Blankenship v. Wagner*, 261 Md. 37, 46, 273 A.2d 412 (1971); *Vito*, 108 Md.App. at 419–420, 672 A.2d 129; Dobbs, *supra*, at § 160.

The principle is sometimes phrased in the following terms. *Res ipsa loquitur* permits an inference to establish a prima facie case when evidence is unavailable or is available only to the defendant. *Dover Elevator*, 334 Md. at 261–62, 638 A.2d 762. It is phrased that way at times because, while a plaintiff is rarely precluded from relying on the doctrine solely because the defendant is in a better position to explain what happened, the doctrine is based on that premise. *Peterson*, 258 Md. at 19–20, 264 A.2d 851.

Here, appellants presented both direct evidence of a specific act of negligence, exceeding the speed limit, and evidence relating to the entire sequence of events. The combination of Mssrs. Mercedes' and Gatewood's testimony covered the period of time and sequence of events during the relatively short distance that the vehicle in question traveled between leaving the club and the point of the accident.

Moreover, in this case, the doctrine's premise is not satisfied. This is not a case in which a vehicle suddenly and without explanation left a highway with no witnesses. The relevant facts were either known or equally available to the parties. Mr. Mercedes testified that Ms. Balkazar was a passenger in the vehicle, who survived the accident and had personal knowledge of the circumstances. Moreover, the parties' joint pretrial statement listed many proposed witnesses for appellants, including Ms. Balkazar and several Montgomery County police officers. The statement also listed as appellants' proposed exhibits police photos of the scene after the accident. Clearly, evidence that was available was available to appellants.[4]

Thus, the issue before this Court is whether, having produced direct evidence of exceeding the speed limit and evidence describing the sequence of events, the evidence permits a reasonable inference of causation. It must "amount to a reasonable likelihood or probability rather than possibility." *Peterson v. Underwood,* 258 Md. at 17, 264 A.2d 851 (emphasis added). I will discuss *Bozman v. State,* 177 Md. 151, 9 A.2d 60 (1939) and *Miller v. Graff,* 196 Md. 609, 78 A.2d 220 (1951), two Court of Appeals cases relied on by appellants, where circumstantial evidence was sufficient to permit a reasonable

---

4. I do not address the question whether *res ipsa loquitur* is inapplicable for other reasons, *e.g.,* whether the accident is one that ordinarily does not occur in the absence of negligence. *Compare Christ v. Wempe,* 219 Md. 627, 150 A.2d 918 (1959) (mere fact a vehicle skidded or slid on a slippery highway not of itself sufficient for *res ipsa loquitur*) with *Hanes,* 236 Md. 28, 202 A.2d 364 (1964) *(res ipsa loquitur* properly applied where the vehicle skidded and left road without explanation, there was no evidence of specific acts of negligence, and the road was dry, straight, and slightly uphill at point of the accident).

inference that a driver's speeding was a proximate cause of the accident. I will also discuss *Sun Cab Co. v. Walston,* 15 Md.App. 113, 289 A.2d 804 (1972), *aff'd,* 267 Md. 559, 298 A.2d 391 (1973), despite its reliance on the doctrine of *res ipsa loquitur,* as reliance on the doctrine was unnecessary because the evidence presented permitted the required inferences without regard to *res ipsa loquitur.*[5] Finally, I will discuss the cases cited by the majority which were not cited by appellants.

The facts in the cases just referenced are instructive in demonstrating the need to prove something more than exceeding a speed limit to generate a question for the trier of fact and highlight the shortcomings of appellants' evidence. Besides evidence of the driver's excessive speed, there was a further showing, absent here, of either additional negligent acts by the drivers, evidence to support a finding that the speed was excessive under the circumstances (as distinguished from merely exceeding a speed limit), or other evidence to support a finding that the speed contributed to the happening of the accident.

In *Miller v. Graff,* 196 Md. 609, 78 A.2d 220 (1951), a taxi hit a four-year-old child, who was crossing the street in the middle of the block of a residential neighborhood. A high school and an elementary school were only two blocks away, and a "Slow, School" sign was posted on the street only a short distance beyond the scene. *Id.* at 617, 78 A.2d 220. A

---

**5.** Some writers have commented on the fact that courts sometimes rely on *res ipsa loquitur* in error when it is not applicable. Dobbs, *supra,* at § 154. This has the effect of confusing the question whether inferences are permitted to show specific acts of actionable negligence with estimating the probabilities of unknown acts of actionable negligence. *Id.* When a court applies the doctrine where there is circumstantial evidence of specific acts of actionable negligence, what the court is actually doing is determining whether inferences from circumstantial evidence of specific acts of negligence are sufficient to create a question for the trier of fact. *See, e.g., Vito,* 108 Md.App. 408, 672 A.2d 129, *aff'd* in *Cogan Kibler, Inc.,* 346 Md. at 202, 210–211, 695 A.2d 191 (stating that this Court's reliance on *res ipsa loquitur* was misplaced because the plaintiff produced sufficient circumstantial evidence of actionable negligent acts to create a fact question)

disinterested eyewitness testified that the taxi was traveling at forty-five miles per hour in a twenty-five mile zone when the driver slammed on the brakes, skidding about eighteen feet before it struck the child and about six feet afterwards. A police officer also testified that one of the blood spots, which indicated where the child was struck, was about fifty-five feet from one end of the skid marks left by the taxi. Additionally, there was evidence it was daylight, the weather was clear, and the taxi driver had an unobstructed view of the entire block. The Court upheld the trial court's denial of the taxi driver's motion for a directed verdict [6] because the evidence allowed a jury to find that the driver could have avoided hitting the child if he had been driving within the speed limit. At a point prior to impact, he saw the child and attempted to stop. *Id.* at 619, 78 A.2d 220.

In *Bozman v. State,* 177 Md. 151, 9 A.2d 60 (1939), a driver struck an eight-year-old boy crossing the road on his bicycle in broad daylight. The driver claimed he was driving within the forty-five mph speed limit, saw the boy at a distance of seventy five feet, jammed on the brakes immediately, and had almost stopped when he struck the child near the center of the road. *Id.* at 154, 9 A.2d 60. He moved for a directed verdict, claiming there were no inferences of negligence on his part. The skid marks left by his car, though, started only fifteen feet before the point of impact and extended diagonally across the road for seventy-five feet. The Court found there was legally sufficient evidence of negligence and upheld the trial court's denial of the motion in light of (1) the seventy-five foot long skid marks; (2) the admission of the driver that he saw the boy at a distance of seventy-five feet; and, (3) "other testimony in the case." *Id.* at 155, 9 A.2d 60. By merely reciting the facts in support of its finding sufficient evidence of negligence, the Court did not expressly delineate which evidence satisfied the proposition that the driver's excessive speed was a cause-in-fact of the accident; however, the Court

---

**6.** The motion for "directed verdict" is now a motion for judgment. *Myers v. Bright,* 327 Md. at 412 n. 2, 609 A.2d 1182.

impliedly indicated that excessive speed could have contributed, based on the distance from which the driver first saw the child along with the length of the skid marks.

In *Sun Cab Co. v. Walston*, 15 Md.App. 113, 289 A.2d 804 (1972), *aff'd*, 267 Md. 559, 298 A.2d 391 (1973), the driver of a taxicab proceeding east on Edmondson Avenue applied brakes, slid, jumped over the median, and hit a truck traveling in the opposite direction. A witness observed all the events leading to the fatal accident from the front yard of his home. The witness testified that the cab was traveling thirty to forty m.p.h., in an area where the posted speed limit was thirty m.p.h. *Id.* at 148, 289 A.2d 804. Additionally, he testified that it was raining, the streets were wet, and all four tires of the taxi were bald. Other witnesses corroborated various aspects of his testimony. The defendants moved for a directed verdict at the close of all evidence, claiming there was insufficient evidence of the taxi driver's negligence. The Court upheld the trial court's denial of their motion and found circumstances entitled the jury to find that the taxi driver's negligence was the sole proximate cause of the accident. *Id.* at 148, 289 A.2d 804.

In the above cases there was a showing of something more than speed which gave the driver's speed significance under the circumstances and thereby allowed the inference that it was a cause-in-fact of the claimed injury. A plaintiff may achieve this threshold through proof of circumstances demonstrating that violation of the speed limit was unreasonable under the circumstances, like the driver's using bald tires in the rain in Sun Cab or the driver's inability to stop when aware of a hazard in *Graff*. It may also be accomplished through physical evidence and testimony that create context and consequences for the driver's excessive speed. For instance, the evidence in *Bozman* of the driver's admission that he saw the child seventy five feet before the point of impact, combined with the length of the skid marks indicative of his speed, permitted the inference that the driver could have stopped within that distance had he not been exceeding the speed limit.

Similarly, in the cases cited by the majority, there was evidence other than mere exceeding a speed limit. In *Bavis v. Fonte*, 241 Md. 123, 125, 215 A.2d 739 (1966), the plaintiff passenger testified to the entire sequence of events, which included that the driver was driving at a reasonable rate of speed, failed to negotiate a curve, hit the curb, and then a pole. The plaintiff also introduced a statement that the driver had given to a police officer stating that an unidentified vehicle had overtaken him from the rear and forced him to his right, causing him to hit the curb. The direct evidence permitted an inference that the driver had negligently driven too close to the curb, and hitting the curb caused him to lose control.

In *Short v. Wells*, 249 Md. 491, 493–495, 240 A.2d 224 (1968), there was evidence that, at the time of the accident, it was raining, the road was wet, and the vehicle had tires with "little tread" and "little gripping tendency." There was also evidence that the driver was intoxicated.

In *Powers v. State u/o Reynolds*, 178 Md. 23, 28, 11 A.2d 909 (1940), there was evidence that the driver had consumed alcoholic beverages and was speeding on a mountain road, a speed unreasonable those circumstances.

In *Stitzel v. Kurz*, 18 Md.App. 525, 533, 308 A.2d 430, *cert denied*, 269 Md. 761 (1973), *overruled on other grounds* in *Eastgate Associates v. Apper*, 276 Md. 698, 350 A.2d 661 (1976), the driver testified that he was confused by an improper directional sign reflecting a curve, which caused him to apply his brakes unnecessarily. The evidence permitted an inference that he negligently reacted to the sign, which caused the accident. The sign was replaced, and the county was also sued for having placed the improper sign.

In *Fields v.Morgan*, 39 Md.App. 82, 83–84, 382 A.2d 1099 (1978), there was evidence that the driver was intoxicated, struck a pedestrian, left the scene, and that he and the passenger were fighting over the steering wheel when the accident occurred. There was ample evidence of specific acts of actionable evidence.

In *Bowles*, 25 Md.App. 558, 334 A.2d 532, like *Hanes*, 236 Md. 28, 202 A.2d 364, a vehicle left the roadway and struck a pedestrian and an embankment, respectively, without evidence of more, and without the availability of any other evidence. *Res ipsa loquitur* was applied in those cases to permit an inference of an unspecified act of negligence. Again, that was not the approach in this case, and *res ipsa loquitur* does not apply.

When I juxtapose the evidence in the cases in which the evidence was sufficient to permit an inference of a specific act or acts of negligence and the present matter, I find a fatal defect in appellants' attempted prima facie showing of negligence, namely the absence of any facts that causally links the driver's violation of the speed limit to the claimed injury. *See Myers v. Bright*, 327 Md. 395, 405, 609 A.2d 1182 (1992) ("Causal connection between the excessive speed and the collision must be proved by the evidence, as a fact, and not be left to mere speculation and conjecture.") (quoting *Roper v. Archibald*, 680 S.W.2d 743, 748 (Mo.App.1984)).

Assuming the vehicle in question struck the right curb, as suggested by Mr. Gatewood, his testimony provides no insight as to what caused Carlos Brenes to strike the right curb. In their brief, the only explanation offered by appellants is that the car hit the right curb due to Carlos Brenes' "obvious loss of control," which is not helpful because it, in the absence of factual support, implicitly assumes the very proposition it purports to explain.

While common sense dictates that it is *possible* that the speeding caused the fatal accident, there were no facts presented from which the causal connection was *probable*. The only reasoning that could establish liability was that Carlos Brenes exceeded the speed limit, and it was that act which caused his car to collide with a light pole, *post hoc, ergo propter hoc.*[7] To allow a jury to draw this connection would

---

7. This Latin phrase (translation: "after this, therefore because of this") reflects the logical fallacy committed when a person reasons that "since

entice them into "mere conjecture or speculation" based on possibility, rather than probability. It would amount to holding that liability may be predicated upon the mere happening of an accident which, exclusive of *res ipsa loquitur* or other situations giving rise to a prima facie presumption or inference of actionable negligence, is not the law of Maryland. *Peterson,* 258 Md. at 19, 264 A.2d 851 (quotations and citations omitted).

I would affirm the judgment.

that event followed this one, that event must have been caused by this one."